### James R. ENDRESS, Petitioner–Appellant

v.

### Richard L. DUGGER, Director, Division of Corrections, State of Florida, Respondent–Appellee.

No. 88–3612.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1989.

---

Bennie Lazzara, Jr., Henry Lee Paul, Tampa, Fla., for petitioner-appellant.

Charles Corces, Jr., Joseph R. Bryant, Asst. Attys. Gen., Tampa, Fla., for respondent-appellee.

Before FAY and HATCHETT, Circuit Judges, and HOFFMAN *, Senior District Judge.

FAY, Circuit Judge.

The petitioner James R. Endress appeals a federal district court order which denied his petition for a writ of habeas corpus. In the petition, Endress alleged that certain statements he made to a police detective

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

while in police custody were improperly admitted into evidence since they were the product of an illegal interrogation in violation of his fifth and fourteenth amendment rights. In reviewing the habeas petition, the district court applied the § 2254(d) presumption of correctness to certain findings of the Florida appellate court and concluded that Endress' statements did not result from interrogation, but were made voluntarily. 28 U.S.C. § 2254(d) (1982). Accordingly, the court denied the habeas petition. On appeal, the petitioner contends that the district court improperly gave the state appellate court findings a presumption of correctness under § 2254(d) and erred in finding that no interrogation took place. We disagree and hold that the district court properly applied the presumption of correctness to the state appellate court findings and correctly concluded that the petitioner's statements were not the product of an illegal interrogation.

## I. Background

On October 28, 1981, Endress was arrested for a homicide which had occurred at a motel where he resided. Prior to the arrest, Endress' father requested that the Tampa police not question Endress until the father had an opportunity to talk with him at the police station. Upon arrest, the police advised Endress of his constitutional rights and Endress indicated he understood those rights. The police did not interrogate Endress because of the agreement with his father. The Tampa police booked Endress into the Hillsborough County Jail in the custody of the Hillsborough County Sheriff. However, jurisdiction of the investigation remained with the Tampa police department.

Detective Hunt of the Hillsborough County Sheriff's Office, noticed on a booking slip that Endress was in jail on a murder charge. As active members in the

same church, Detective Hunt and Endress had been friends for about ten years. After seeing the booking slip, Detective Hunt sought and received permission to pay Endress a personal visit. Detective Hunt went to visit Endress on two occasions intending his visits to be personal. (R. 2–40–42). The detective did not repeat the *Miranda* warnings to Endress. During the second visit, Endress began making statements regarding the crime. When Endress made these statements, Detective Hunt advised Endress to stop and not to say anything to him regarding the crime. After the visit, Detective Hunt reported Endress' statements to his supervisor.

Prior to trial, Endress filed a motion to suppress the statements made to Detective Hunt. The trial court denied the motion after an evidentiary hearing.[1] At trial, Detective Hunt testified regarding the statements Endress made during the second visit. Detective Hunt testified that Endress stated that he and a friend were given about $170 to purchase a street gun. They purchased the gun for about $90 and were allowed to keep the balance of the money. (R. 2–54). Hunt also testified that he did not ask Endress anything regarding the homicide for which he was in jail and that Endress' statements were not in response to any questions. (R. 2–43, 46). Endress was convicted and sentenced to life in prison.

Endress appealed his conviction to the Florida Second District Court of Appeal claiming *inter alia* that Detective Hunt's testimony regarding Endress' statements was improperly admitted into evidence. Endress argued that the statements were elicited through custodial interrogation in the absence of *Miranda* warnings which violated Endress' fifth amendment right against self-incrimination. The appellate court found that the statements were not

---

1. In this motion, Endress sought to suppress the testimony of several officers regarding statements Endress made to them. The trial court held an evidentiary hearing to determine the admissibility of the testimony. After hearing testimony from several law enforcement officers, including Detective Hunt, the trial court denied the motion to suppress the statements

made to Detective Hunt and to Detective Reynolds, but granted the motion to suppress statements made to Detective Larry Pinkerton. Although the parties have not filed a transcript of the entire trial, a transcript of the evidentiary hearing is part of the record. The trial court made no factual findings in ruling on the motion to suppress.

the product of interrogation and affirmed the state trial court's ruling. *Endress v. State*, 462 So.2d 872 (Fla. 2nd D.C.A.1985).

In concluding that the statements were not elicited through interrogation, the Second District Court of Appeal found that:

> Detective Hunt had not been in communication with any law enforcement agencies connected with the homicide. The key point is that he did not interrogate appellant [Endress] concerning the crime for which he was charged. He visited with him twice. On one or both occasions, appellant voluntarily told Detective Hunt about purchasing a "street gun" at another person's request and keeping a portion of the money furnished for the purchase. When Detective Hunt realized appellant might be telling him something about the crime, he advised him not to talk about it. He did not advise him of his constitutional rights because he did not interrogate him and did not want to be involved in the criminal investigation.
>
> This court has held that even under circumstances where there is the equivalent of an interrogation, it is not necessary to readvise a defendant of constitutional rights where there has been such advice previously given and understood. (citations omitted). We conclude from the record before us, however, that Detective Hunt's visits with appellant did not rise to the level of interrogation.

*Id.* at 873–874. Subsequently, Endress filed a petition for a writ of habeas corpus in federal district court. The petition renewed Endress' challenge to the admission of Detective Hunt's testimony. Accepting the recommendation of the magistrate, the district court afforded the Florida appellate court's finding that no express interrogation occurred a presumption of correctness under § 2254(d). The district court found that the question of whether the functional equivalent of interrogation occurred was a legal question meriting independent review.

However, the court noted that other state appellate court findings supported the conclusion that no functional equivalent of interrogation took place and thus, denied relief. Endress appeals the district court's ruling arguing that the district court erred in applying the § 2254(d) presumption of correctness to the Florida appellate court's findings and erred in determining that Detective Hunt did not interrogate Endress.

II. Discussion

Section 2254(d) provides that state court factual determinations "shall be presumed to be correct" in a federal habeas corpus proceeding unless one of the eight enumerated exceptions applies.[2] 28 U.S.C. § 2254(d). In *Sumner v. Mata*, 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981), the Supreme Court held that the § 2254(d) presumption applies to both state trial and appellate court factual determinations. In this case we address first, whether the district court misapplied the § 2254(d) presumption to certain findings made by the state appellate court, and second, whether the district court properly determined that the police conduct in this case did not constitute the functional equivalent of interrogation in violation of Endress' fifth amendment right against self-incrimination.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court defined when an accused's fifth amendment right against self-incrimination is violated. The *Miranda* Court held that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Id.* at 478, 86 S.Ct. at 1630. Therefore, the procedural safeguards of warning the suspect of his constitutional rights must be instituted to protect the privilege. *Id.* at 478–479, 86 S.Ct. at 1629–

---

**2.** In pertinent part, 28 U.S.C. § 2254(d) provides:

"In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... shall be presumed to be correct unless ... (8) the Federal court ... concludes that such factual determination is not supported by the record as a whole."

1630. These warnings are required before any statement may be admitted into evidence at trial which was elicited from a person in custody through interrogation. The Supreme Court emphasized, however, that "volunteered statements of any kind are not barred by the fifth amendment and their admissibility is not affected by our holding today." *Id.* at 478, 86 S.Ct. at 1630.

Since the warnings are required only in the situation of a custodial interrogation, many courts have addressed the issues of when a person is in "custody" or has been "interrogated" for the purposes of *Miranda.* These cases have recognized that while interrogation usually takes the form of direct questioning, there are situations where interrogation can occur through indirect means. For instance, in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court held that interrogation, for purposes of *Miranda,* occurs whenever a person is "subjected to either express questioning or its functional equivalent." *Id.* at 300–301, 100 S.Ct. at 1689. In other words, the term interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689.

In *Innis,* the suspect was arrested for a murder committed with a sawed-off shotgun. Upon arrest, the suspect requested counsel, thus invoking his sixth amendment rights. While the suspect was being transported in a car with three officers, one of the officers spoke to the other officers. The officer said that a school for handicapped children was located near the scene of the murder, and that "God forbid one of the children might find a weapon with shells and they might hurt themselves." *Id.* at 294–295, 100 S.Ct. at 1686. The suspect interrupted the conversation and told the officers where the gun was located.

The suspect sought to suppress the officers' testimony regarding his statement revealing the location of the gun. He claimed that the statements had been elicited in violation of his sixth amendment right to have counsel present during interrogation. The Supreme Court disagreed finding that no interrogation had taken place because the officers should not necessarily have known that their conversation was "reasonably likely to elicit an incriminating response." *Id.* at 302, 100 S.Ct. at 1690.

Similarly, in *Arizona v. Mauro,* 481 U.S. 520, 107 S.Ct.1931, 95 L.Ed.2d 458 (1987), the Supreme Court addressed whether police conduct constituted the functional equivalent of interrogation. In this case, the suspect Mauro was in police custody for killing his son. After the police advised him of his *Miranda* rights, Mauro stated that he would not answer any questions without the presence of his lawyer. All questioning ceased. Mauro's wife then insisted on speaking with him. Although reluctant at first, the police permitted her to speak with her husband, but only in the presence of an officer and with a tape recorder running. One of the officers showed the wife into the room, seated himself at the desk, and put a tape recorder in plain sight on the desk. During the conversation, Mauro made incriminating remarks to his wife and the tape of the conversation was used at trial. Mauro was convicted and sentenced to death.

On appeal, Mauro claimed that the police's actions constituted interrogation or its functional equivalent which violated his sixth amendment right to have his counsel present during interrogation. Thus, the statements were elicited in violation of *Miranda* and improperly admitted into evidence. The Supreme Court disagreed holding that the police action did not constitute interrogation. The Court found that the tape recording showed that the officer present did not ask the accused any questions. *Id.* at 527, 107 S.Ct. at 1935. Further, the officer's presence was not improper and no evidence was presented to indicate that the officers had sent the wife in to see her husband for the purpose of eliciting incriminating statements. *Id.* The

Court stated that "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself." *Id.* at 529, 107 S.Ct. at 1936. Since Mauro was "not subjected to compelling influences, psychological ploys, or direct questioning," his volunteered statements could not be considered the result of police interrogation. *Id.*

The Court's analysis in *Innis* and *Mauro* implies that whether a person has been subjected to the functional equivalent of interrogation is more than simply a finding of historical fact.[3] A court must evaluate the facts to determine whether the police should have known their conduct was reasonably likely to elicit an incriminating response. Accordingly, whether the functional equivalent of interrogation has taken place is a mixed question of law and fact. Thus, this ultimate issue is not entitled to the § 2254(d) presumption of correctness; rather as a question of law, the issue merits independent consideration in a federal habeas corpus proceeding. *See e.g. Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (the issue of the voluntariness of a confession is not an issue of fact entitled to the § 2254(d) presumption, but is a legal question meriting independent review).

In this case, the state appellate court found that Detective Hunt had not directly questioned Endress regarding the crime, thus, no express interrogation occurred. The state appellate court's finding that no express interrogation occurred in the sense that no questions were asked is a factual finding. Thus, we hold that the district court properly ruled that this finding was entitled to the § 2254(d) presumption.

We now evaluate the facts to determine whether Endress was subjected to the functional equivalent of interrogation. The state appellate court found that 1) Detective Hunt was a close friend of Endress; 2) Detective Hunt visited Endress to inquire on his well-being and not at the direction of any officer connected with the criminal investigation; 3) Detective Hunt had not been in contact with any law enforcement agencies connected with the investigation; and 4) Detective Hunt advised Endress not to talk to him about the crime when he realized Endress could be making statements regarding the crime. These findings by the state appellate court are subsidiary factual findings bearing on the ultimate issue of whether the functional equivalent of interrogation occurred. *See Miller,* 474 U.S. at 112, 106 S.Ct. at 450; *Ballard v. Johnson,* 821 F.2d 568 (11th Cir.1987). Since the petitioner has not established that these findings are not supported by the record or that any other of the enumerated exceptions to § 2254(d) exists, we hold that these findings are entitled to the § 2254(d) presumption.

Our independent review of these facts leads us to conclude that Endress was not subjected to the functional equivalent of interrogation. Like the situation in *Mauro,* the investigating officers in this case in no way arranged the meeting to elicit an incriminating response from the suspect. The meeting was arranged by Detective Hunt who had no connection with the investigation and who visited Endress in the capacity of a personal friend. Detective Hunt in no way intended to elicit any information from Endress regarding the crime. Unlike the officer in *Innis,* Detective Hunt made no statement regarding the crime or its circumstances to the suspect. Hence, the facts in this case do not even rise to the level of those in *Innis* which the Supreme Court held not to constitute interrogation. We do not believe the officers in this case should have known that Detective Hunt's visit was reasonably likely to elicit an incriminating response.

Based on the factual findings of the state appellate court which we presume correct, we find that Endress' statements were voluntary and not elicited through interroga-

---

**3.** *Innis* and *Mauro* deal with a violation of the sixth amendment right to counsel, rather than the fifth amendment right against self-incrimination involved in this case. However, because the issue of whether interrogation occurred is similar under both the sixth and fifth amendments, we find these cases helpful in defining the nature of the interrogation issue.

tion or its functional equivalent. To hold otherwise would be "completely at odds" with the findings of the state court. *Kuhlmann v. Wilson,* 477 U.S. 436, 460, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986).

AFFIRMED.