UNITED STATES of AMERICA, Plaintiff–Appellee Cross–Appellant,

v.

Gaylene Laverne STUBBS, Defendant–Appellant Cross–Appellee.

No. 89–6112.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1991.

---

2. The attack, similar to a stroke, rendered her temporarily blind and paralyzed.

Lydia A. Fernandez, Rodriguez & Fernandez, P.A., Miami, Fla., for defendant-appellant/cross-appellee.

Andres Rivero, Linda Collins Hertz, Anne M. Hayes, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee/cross-appellant.

Before EDMONDSON, Circuit Judge, RONEY *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

EDMONDSON, Circuit Judge:

Defendant appeals convictions resulting from her role in a conspiracy to import cocaine from the Bahamas for distribution within the United States. Defendant challenges the admission of testimony from her codefendant about an inculpatory statement defendant made while the two shared a jail cell, as well as the admission of evidence of defendant's earlier criminal behavior. Defendant also attacks the trial judge's failure to declare a mistrial after her codefendant commented at trial on defendant's refusal to speak to police at the time of her arrest. The government appeals the district court's refusal to enhance defendant's sentence for obstruction of justice and challenges as well the court's decision to reduce defendant's sentence for acceptance of responsibility. We AFFIRM defendant's convictions and the sentence imposed by the district court.

I.

Defendant Stubbs was arrested after she and codefendant Edwards were searched by customs inspectors in the Miami airport. The two women passed through immigration without incident, but a customs inspector stopped Edwards after noting that she walked with a limp and had a bulky midsection. The inspector noted the number of times the two women had travelled into the United States from the Bahamas and asked female customs inspectors to perform pat-down searches of both women. The search uncovered the cocaine planted on Edwards; no contraband was found on defendant.

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

Edwards immediately confessed her involvement and later entered into a plea agreement with the government. At trial, Edwards testified that, after the two women were arrested, an agent of the Drug Enforcement Agency (DEA) told Edwards that defendant would not talk. Edwards testified that she asked the DEA agent if she could talk with defendant to get her "to speak the truth." The agent later told Edwards that he would help Edwards if Edwards "talked and everything."

Edwards also testified that later, when Edwards and defendant shared a jail cell, defendant told Edwards that Edwards would have to "take the rap" for her, but that defendant would take care of Edwards' children while Edwards was in prison. Edwards did not report this conversation to the police and told the prosecutor only shortly before trial, more than two months after the conversation.

Edwards also testified at trial that, although defendant and her boyfriend were unemployed, they maintained a high lifestyle through dealing marijuana. Defendant admitted at trial that her boyfriend sold marijuana but denied ever transporting drugs for him.

Defendant was convicted on all counts.[1] The district judge adjusted defendant's sentence upward for her managerial role in the offense and downward for her acceptance of responsibility, yielding a 66–month prison sentence. The district judge rejected a government request to adjust the sentence upward for obstruction of justice.

## II.

### A. *Admission of Jailhouse Confession*

Defendant claims that the admission of testimony by her codefendant about an inculpatory statement made by defendant while the two shared a jail cell violated defendant's Fifth Amendment right against compelled self-incrimination and her right to counsel under the Fifth and Sixth Amendments. Defendant objected to the following testimony by codefendant Edwards:

> Gaylene [defendant] told me that I must take the rap because she can't do nothing for me in there, and let her go and she would take care of me while I'm in prison and bring my babies to see me.

### 1. Fifth Amendment Self–Incrimination Claim

■ For defendant to succeed on her claim that admission of the statement violated her Fifth Amendment right against compelled self-incrimination, she must demonstrate as an initial matter that the facts surrounding her inculpatory statement amounted to a "custodial interrogation." *Endress v. Dugger,* 880 F.2d 1244, 1248 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990). In *Illinois v. Perkins,* —— U.S. ——, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), the Supreme Court upheld the admission of a "jailhouse confession" made to an undercover law enforcement agent posing as a cellmate and made clear that there can be no "custodial interrogation" absent some official, law enforcement-sponsored coercion:

> The essential ingredients of a "police-dominated atmosphere" and compulsion are not present when an incarcerated person speaks freely to someone that he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking.

*Id.* at ——, 110 S.Ct. at 2397.

If the Fifth Amendment is not implicated when the incarcerated person speaks freely to an undercover agent, we see no justification for concluding the result should be different where, as here, the cellmate is not actually an undercover law enforcement

---

**1.** Defendant had been charged with the following counts: (1) conspiracy to import at least 500 grams of cocaine, in violation of 21 U.S.C. § 963; (2) conspiracy to possess with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 846; (3) importation of at least 500 grams of cocaine, in violation of 21 U.S.C. § 952(a); and (4) possession with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1).

agent but instead is—at best[2]—a confidential informant. *See id.* (*"Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner.").

Defendant attempts to limit the holding of *Perkins* to the question of whether an undercover agent is required to give *Miranda* warnings to a cellmate before discussing the cellmate's case; in fact, that was the specific question presented. *See id.* at ——, 110 S.Ct. at 2396. But, to reach that issue the Supreme Court expressly held that the surrounding circumstances did not amount to a custodial interrogation, *id.* at ——, 110 S.Ct. at 2397, and that "[t]he tactic employed here to elicit a voluntary confession from a suspect does not violate the Self–Incrimination Clause," *id.* at ——, 110 S.Ct. at 2398. *Perkins* controls this case; *Miranda* and Fifth Amendment concerns are not implicated when a defendant misplaces her trust in a cellmate who then relays the information—whether voluntarily or by prearrangement—to law enforcement officials.

### 2. Fifth Amendment Right to Counsel Claim

■ Defendant also claims her Fifth Amendment right to counsel, invoked when she received her *Miranda* warnings and asked to consult with an attorney, was impinged by admission of the jail cell confession. In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court held that, once a person in police custody invokes his *Miranda* rights, "[t]he issue ... is whether the [individual] was 'interrogated' ... in violation of the [individual's] undisputed right under *Miranda* to remain silent until he [has] consulted with a lawyer." *Id.* at 298, 100 S.Ct. at 1688. Defendant relies on the *Innis* Court's statement that interrogation—for Fifth Amendment and *Miranda* purposes—refers "not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689–90. Defendant argues that the police, using Edwards as a confidential informant, placed Edwards and defendant in the same cell knowing that the circumstances were "reasonably likely to elicit an incriminating response." *Id.*

The *Innis* Court made clear, however, that the definition of whether the police practice was so *coercive* that it was likely to evoke an incriminating response "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.* at 301, 100 S.Ct. at 1690. This definition of "interrogation or its functional equivalent" was further refined in *Perkins,* where the Court made clear that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda.*" *Perkins,* —— U.S. at ——, 110 S.Ct. at 2397. For the same reasons that disposed of defendant's Fifth Amendment compelled self-incrimination claim, *Perkins* defeats defendant's argument that the circumstances of her conversation with her friend and fellow prisoner reflected compulsion and amounted to "interrogation" for purposes of her Fifth Amendment right to counsel claim.[3]

**2.** Our review of the record leaves serious doubts about whether Edwards was acting as a confidential informant. Edwards testified outside the presence of the jury that no law enforcement officials had asked her to elicit information from defendant. Edwards also testified that she did not tell authorities about defendant's inculpatory jailhouse statement until several days before trial, more than two months after the jail cell conversation took place. Though Edwards confessed to her involvement and implicated defendant at the time of her arrest, she did not enter into a plea agreement and officially become a cooperating witness until well after the day of the inculpatory jail cell conversation.

**3.** Defendant cites Justice Brennan's concurrence in *Perkins* to suggest that the decision in that case does not address a case where the inmate "had previously invoked his Fifth Amendment right to counsel or right to silence," *Perkins,* —— U.S. at —— n. * *, 110 S.Ct. at 2399 n. * * (Brennan, J., concurring in judgment). Justice Brennan suggests that once an individual has "invoked either right, the inquiry would focus on whether he subsequently waived the particular right." *Id.* The *Innis* Court was faced with just such facts, as the suspect there invoked his

### 3. Sixth Amendment Right to Counsel Claim

Defendant also objects to admission of her "jailhouse confession" because the conversation with her cellmate occurred after her Sixth Amendment right to counsel had attached.[4] Our inquiry focuses on whether law enforcement agents "deliberately elicited" incriminating statements from defendant in the absence of her lawyer, a practice forbidden by the Supreme Court in *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964).

In *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Court applied the *Massiah* test to inculpatory statements made to a jailhouse informant, striking the confession because the police, through the informant, elicited incriminating information from the defendant without the presence of counsel by stimulating conversation about the crime. *Id.* at 269, 100 S.Ct. at 2186. In *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), the Court further explained that *Massiah* and the Sixth Amendment are violated whenever the government either "intentionally creates" or "knowingly exploits" an opportunity to confront the defendant without counsel. *Id.* at 176, 106 S.Ct. at 487. Defendant claims that law enforcement officials deliberately placed her in the same cell as codefendant Edwards to exploit knowingly the likelihood defendant might make incriminating statements to Edwards.

In its most recent statement on the subject, the Supreme Court clarified the facts necessary to find a *Massiah* violation:

[T]he primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of *direct police interrogation*.... [A] defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed to elicit incriminating remarks.

*Kuhlmann v. Wilson*, 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986) (emphasis added) (no *Massiah* violation where jailhouse informant is placed in close proximity to defendant but makes no effort to stimulate conversation on the crime charged).

Even assuming, then, that Edwards was deliberately placed in close proximity to defendant and was acting as a government agent,[5] defendant must still "demonstrate that the police and their informant took some action, beyond merely listening, that was designed to elicit incriminating remarks." *Id.* Defendant has presented no evidence—and has not even argued—that Edwards initiated their jail cell conversation about the case. Instead, defendant points to Edwards' testimony that, at the time she was arrested, Edwards told a DEA agent that she would try to convince defendant "to speak the truth" and that a DEA agent later told Edwards "to talk and everything and he would help me." While this testimony might be probative on the issue of whether Edwards was cooperating with the government, it does not demonstrate enough about the only relevant fact:

*Miranda* rights to silence and counsel. But, the *Innis* Court concluded that because "respondent was not 'interrogated' for *Miranda* purposes, we do not reach the question whether the respondent waived his right under *Miranda* to be free from interrogation until counsel was present." *Innis,* 446 U.S. at 298 n. 2, 100 S.Ct. at 1688 n. 2. Because we conclude *Miranda* was not implicated by the conversation between Edwards and Stubbs, we need not reach the issue of waiver.

The majority opinion in *Perkins* did make clear, however, that a defendant's *Sixth* Amendment right to counsel does survive the holding

in that case; and we address defendant's Sixth Amendment claim in the next section of this opinion. *See Perkins,* —— U.S. at ——, 110 S.Ct. at 2398–99 (expressly distinguishing the claim in *Perkins* from the Sixth Amendment right to counsel claim implicated in very similar fact patterns).

4. We assume without deciding that defendant's Sixth Amendment right to counsel had attached by the time she was incarcerated.

5. *See supra* note 2.

whether in the jail cell Edwards "interrogated" defendant by eliciting incriminating information or by initiating discussion about the crimes with which defendant was charged. As a result, admission of defendant's jail cell conversation with Edwards did not infringe upon defendant's Sixth Amendment right to counsel.

## B. Comment on Defendant's Postarrest Silence

Defendant argues that testimony by Edwards improperly commented on defendant's postarrest refusal to talk with police, violating the Supreme Court's decision in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Defendant's claim arises out of the following portion of the government's direct examination of Edwards:

Q. What happened after you talked to Agent Giuffre?

A. After he went and he talked to [the defendant] and he said, "She won't say anything," I said, "Let me talk to her to see if I could get her to speak the truth."

The prosecutor never attempted to draw out further information about the degree of defendant's cooperation with the police and never mentioned the issue, or Edwards' testimony on the subject, during closing argument.

■ The Supreme Court's holding in *Doyle* was based not on a defendant's Fifth Amendment right against self-incrimination, but on the Due Process Clause and its guarantee against "fundamental unfairness." The *Doyle* Court noted that under the *Miranda* decision an accused is warned that he has a right to remain silent "as a prophylactic means of safeguarding Fifth Amendment rights." *Id.* at 617, 96 S.Ct. at 2244 (citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). While acknowledging that "the *Miranda* warnings contain no express assurance that silence will carry no penalty," the Court concluded that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* 426 U.S. at 618, 96 S.Ct. at 2245.[6]

■ Defendant relies chiefly on Fifth Circuit precedent, binding and non-binding on this court,[7] and suggests that *any* mention of defendant's postarrest silence is sufficient to make out a *Doyle* violation. *See, e.g., United States v. Shaw*, 701 F.2d 367, 381–82 (5th Cir.1983) (listing cases); *United States v. Sklaroff*, 552 F.2d 1156, 1161 (5th Cir.1977) (spontaneous remark by law enforcement witness that defendant had not made a statement following *Miranda* warnings was error).

To the extent these cases hold that a remark about a defendant's postarrest silence automatically constitutes a *Doyle* violation, they have been undercut by the Supreme Court's opinion in *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). The *Greer* Court clarified that "the holding of *Doyle* is that the Due Process Clause bars *the use* for impeachment purposes' of a defendant's postarrest silence." *Greer*, 483 U.S. at 763, 107 S.Ct. at 3108 (emphasis in *Greer*) (quoting *Doyle*, 426 U.S. at 619, 96 S.Ct. at 2245). In *Greer*, the trial court sustained an objection to a question to the defendant from the prosecutor concerning the defendant's postarrest silence, and there was no further question-

---

6. As the preceding explanation implies, there can be no *Doyle* violation until after a person is given *Miranda* warnings and the assurances implicit therein. *See Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980) ("[N]o governmental action induced [the defendant] to remain silent *before* arrest.") (emphasis added). We note that there is some question in this case whether defendant had been arrested and given her *Miranda* warnings at the time period covered by Edwards' testimony. *See, e.g.,* Brief for Appellant at 23 n. 7 ("[I]t appears that the DEA agent's interrogation of Stubbs and Edwards occurred before they had been formally placed under arrest...."). Our review of the record is inconclusive on this point; we therefore will address the merits of defendant's *Doyle* claim.

7. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

ing or argument about the defendant's silence.

Defendant attempts to distinguish *Greer* on the ground that the trial judge in that case upheld the objection to the *Doyle* remark and immediately instructed the jury to disregard it. By not acting similarly in this case, defendant argues, the district court allowed the testimony to be considered by the jury. We note initially that the prosecution's question in the present case did not specifically bring out or draw attention to the testimony in dispute.[8] Most important, the prosecution never attempted to contradict defendant's trial testimony by referring to Edwards' statement: no further questions of anyone, including defendant, were asked on the subject, and no further mention of it was made in front of the jury.[9] Later in the trial, the government asked the court to issue a curative instruction; the judge declined, expressing concern that an instruction concerning the isolated comment would only draw more attention to it. Given the circumstances, and defendant's failure to request a curative instruction, we cannot conclude that defendant's trial was impaired to the point of "fundamental unfairness."

■ While a single comment alone may sometimes constitute a *Doyle* violation, the Supreme Court's opinion in *Greer* makes clear that a single mention does not automatically suffice to violate defendant's rights when the government does not specifically and expressly attempt to *use*—as was attempted in *Doyle* and in *Greer*—the improper comment to impeach the defendant. *See Lindgren v. Lane,* 925 F.2d 198, 201 (7th Cir.1991) ("As explained in *Greer v. Miller,* it is the use of an accused's silence against him at trial by way of *specific inquiry or impeachment* that forms the basis for a violation of the Fourteenth Amendment.") (emphasis added). As was the case in *Greer,* the prosecutor here "was not allowed to undertake impeachment on, or permitted to call attention to [defendant's] silence." *Greer,* 483 U.S. at 764, 107 S.Ct. at 3108 (citation omitted). The prosecution made no "specific inquiry or argument" about defendant's postarrest silence. *Id.* Accordingly, we conclude there was no *Doyle* violation in this case.[10]

## C. *Prior Criminal Acts Evidence*

■ Defendant objects to the following exchange during government questioning of Edwards:

Q. You stated to us that Mr. McBride [defendant's boyfriend] and Ms. Stubbs [defendant] are unemployed. How do they maintain themselves?

A. They sell herb, marijuana.

---

8. In contrast, the prosecution's questions in *Greer* and *Doyle* focused the jury on the defendants' silence. In *Greer,* after the defendant gave an exculpatory story at trial, the prosecutor asked the defendant, "Why didn't you tell this story to anybody when you got arrested?" *Greer,* 483 U.S. at 759, 107 S.Ct. at 3105. In a similar way, the defendant in *Doyle* offered an exculpatory story during trial testimony and the prosecutor asked during cross-examination, "[I]f that is all you had to do with this and you are innocent, when [Agent] Beamer arrived on the scene why didn't you tell him?" *Doyle,* 426 U.S. at 614, 96 S.Ct. at 2243.

In *United States v. Ruz–Salazar,* 764 F.2d 1433, 1435 (11th Cir.1985), the prosecution asked the Customs officer who was testifying for the government, "Did anyone else make any statements while aboard the vessel?" The Customs officer's answer "no" highlighted the defendant's silence. Again, the question posed by the prosecution specifically called attention to the defendant's silence and, thus, constituted a *Doyle* violation.

9. Defendant objected to Edwards' testimony and moved for a mistrial. At the time, the trial judge and the prosecution did not even recall the remark at issue. The next morning, the judge instructed the court reporter to read back the challenged testimony outside the presence of the jury. Upon hearing the testimony, defense counsel told the judge, "In all honesty, it is not as bad as I thought it was when I heard it." Nonetheless, defense counsel renewed his motion for mistrial, which was denied.

10. The recent opinion in *United States v. Gabay,* 923 F.2d 1536 (11th Cir.1991), relied upon by defendant, is inapposite. In *Gabay,* the panel assumed for decision purposes that a *Doyle* violation had occurred but concluded the improper comment was harmless error given the trial judge's curative instruction and the strong evidence of defendant's guilt. *Id.* at 1541. We do not reach the issue of harmless error because we conclude that, absent *use* by the prosecution of the comment on defendant's postarrest silence, there was no *Doyle* violation.

Q. What do you mean by 'herb'?

A. Marijuana.

Defendant objected to the testimony as irrelevant and as prejudicial evidence of earlier bad acts, prohibited by Fed.R.Evid. 404(b). The court overruled the objection, finding testimony of defendant's unexplained wealth as independently relevant to the issue of defendant's intent to distribute the narcotics. The trial judge's decision to admit the evidence is subject to abuse of discretion review. *See United States v. Beechum,* 582 F.2d 898, 915 (5th Cir.1978) (en banc).

■ We have adopted a three-part test to govern the admissibility of evidence under Rule 404(b):

(1) the evidence must be relevant to an issue other than defendant's character;

(2) the probative value must not be substantially outweighed by its undue prejudice;

(3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

*Id.* at 911–13.

■ All three requirements are satisfied here; the first two are met because "[e]vidence of prior drug dealings is highly probative of intent to distribute a controlled substance, as well as involvement in a conspiracy." *United States v. Hitsman,* 604 F.2d 443, 448 (5th Cir.1979) (applying *Beechum*). The third requirement is met because the trial judge specifically limited Edwards' testimony to information defendant had told her or behavior that Edwards actually witnessed. Edwards testified that she actually witnessed defendant and her boyfriend trafficking in marijuana. The trial judge was well within his discretion in admitting the challenged testimony.

### D. *Sentencing: Obstruction of Justice*

■ The district court, against the recommendation of the probation officer and a request by the government, refused to adjust upward for obstruction of justice. The adjustment is appropriate when a "defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." United States Sentencing Commission, *Guidelines Manual,* § 3C1.1. The government argues that defendant repeatedly perjured herself at trial and relies on a Guideline application note which indicates that "testifying untruthfully" about a material fact at trial "may provide a basis" for applying the upward adjustment. *Id.,* comment. (n. 1(c)). The district court's conclusion that the adjustment was inappropriate is reviewable only for clear error. *United States v. Cain,* 881 F.2d 980, 982 (11th Cir.1989). While the government points out apparent contradictions in defendant's trial testimony, we are unconvinced that the examples offered justify reversal; we therefore affirm. *Cf. id.,* comment. (n. 2) ("[S]uspect testimony and statements should be evaluated in a light most favorable to the defendant.").

### E. *Sentencing: Acceptance of Responsibility*

The district court agreed to adjust defendant's sentence downward for acceptance of responsibility, an adjustment available "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *Id.,* § 3E1.1. The Guidelines instruct that because the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility ..., the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." *Id.,* comment. (n. 5).

■ The judge based his decision on a statement written by defendant but read at sentencing by defense counsel because defendant was "overcome by emotion." According to the government, defendant never actually admits culpability in the statement, coming closest when she says, "I am guilty with being involved with the wrong people. I realize how foolish I was. My mistakes resulted in my being here." Nevertheless, the government claims defendant persisted in her claim of innocence, telling the court, "I have never been involved with drugs." Defendant argues on

appeal that, taken in context, this "claim of innocence" was intended only to suggest that defendant had never been involved with narcotics *before* the events in question.

That defendant's statements are capable of varying interpretations exemplifies why the Sentencing Commission suggests deference be afforded trial judges to weigh the credibility of such in-court statements. The government points out that the statement was read by defense counsel, handicapping the trial court's ability to judge defendant's demeanor. Nonetheless, defendant was in the courtroom, apparently overcome with emotion; and the trial court was able to gauge defendant's credibility during her in-trial testimony. We conclude that there is sufficient foundation in the record to support the district court's decision.

AFFIRMED.