[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 4, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-14867
Non-Argument Calendar

_____

D. C. Docket No. 04-20249-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSWALDO CAYASSO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 4, 2005)**

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Oswaldo Cayasso appeals his four-count drug conspiracy conviction,

arguing that certain statements made by the prosecutor warrant a new trial and that the district court erred in denying Cayasso's motion for a new trial. After review, we affirm.

## I. BACKGROUND

### A. Cayasso's Arrest and Confession

Cayasso arrived in Miami as a crew member on a Honduran ship. One of Cayasso's co-workers, Kenry Estrada, disembarked from the ship and was arrested with 1,079 grams of cocaine in his sandals. Estrada immediately led police to Cayasso, who was waiting at a pre-arranged meeting point in downtown Miami. Estrada identified Cayasso as the person who had given him the sandals containing the cocaine. Estrada also said that Cayasso promised to pay Estrada $1,500 if Estrada would carry the cocaine onto shore.

After Cayasso was apprehended and advised of his constitutional rights, he made various statements to law enforcement officers. According to the officers' testimony at trial, Cayasso stated that the cocaine-filled sandals had been brought onto the ship in Honduras by a man named John Brown. Brown, who was apparently also a member of the ship's crew, had paid Cayasso to take the cocaine off the ship in Miami. However, Cayasso was going on vacation in Miami and therefore would be subjected to a full-fledged customs search, as opposed to the

much less intrusive search of a ship's crewmember who is not intending to stay in the United States. Cayasso therefore recruited Estrada to carry the cocaine because Estrada would be subjected only to the lighter "ship's security" and not to U.S. Customs. Estrada was given the cocaine-filled sandals by John Brown in Cayasso's onboard cabin the night before the arrests.[1]

**B. Cayasso's Trial**

The trial evidence consisted primarily of Estrada's testimony and the testimony of three officers who recounted the details of Cayasso's post-arrest confession. The jury was told that no trace of cocaine was found on Cayasso's person or in a search of his quarters on the ship. Additionally, Cayasso's fingerprints were not found on the shoes, the cocaine, or any other object seized.

However, Cayasso contends that certain statements by the prosecution warrant a new trial. Thus, we detail at some length the allegedly improper statements, and the context in which they were made.

1. Reference in Opening Statement to Post-Arrest Silence

During its opening statement at trial, the government told the jury that it would hear from Kenry Estrada. The government then mentioned that, after Estrada and Cayasso were arrested, they were taken to the Port of Miami and

---

[1]Brown apparently was not apprehended.

questioned by Customs agents and police. The prosecutor then made the following statement, in which he mentioned Cayasso's failure to respond when Estrada was brought into Cayasso's interrogation room:

> The defendant [Cayasso] was also taken back to the Port of Miami and thereafter he was given a right not to talk and agreed to talk. You will hear that both Kenry Estrada and he confessed, not right away, but that he confessed. He said initially he didn't know anything about it.
> The agents continued to question him. They had found 3600 dollars and they were suspicious about it so they asked him about the money. He explained the money.
> They also confronted him with Kenry Estrada. At one point they brought Kenry Estrada into the room and in a loud voice one of the agents . . . asked, is that the guy that gave you the sandals and Estrada agrees, <u>and there's no response by the defendant</u> - -

(Emphasis added.)

Defense counsel immediately objected, stating that the prosecutor was commenting on Cayasso's right to remain silent. The district court sustained the objection and instructed the jury not to consider the defendant's silence, as follows:

> Members of the jury, I have already advised you, and I will do so again, that the defendant does not have to testify and that cannot be considered by you in any way in considering whether the government has proved their case. You may proceed.

The prosecutor then went on to describe Cayasso's confession in detail and concluded his opening statement without further reference to Cayasso's silence.

2. Government's Remark that Defense Counsel was "Playing"

4

In its closing argument rebuttal, the government stated that defense counsel was "playing on the ignorance of lay people." Specifically, the prosecutor made the following statement:

> [Cayasso's counsel] would like this case to be about Kenry Estrada. That's why he spent the bulk of his time talking about Kenry Estrada. You will get that plea agreement along with the other exhibits. Like [Cayasso's counsel] I encourage you to read the whole thing. We have gone through it before in front of a judge. There are no secrets in there. [Cayasso's counsel] is playing on the –

Cayasso's counsel objected, stating that "[t]his is improper. He can't attack counsel. He is saying I am playing, which is not appropriate." Overruling the objection, the court responded that the government was "simply replying to [defense counsel's] argument."[2]

The following interchange then occurred in front of the jury:

> [Government]: He is playing on the lay ignorance of people as to plea agreements, arraignments and pretrial detention matters.

---

[2]Evidently, the government was responding to several statements made by defense counsel impugning the credibility of the prosecution. Defense counsel discussed at length certain evidence that was withheld from the grand jury, including the evidence that Cayasso's fingerprints were not on any of the drug-related objects. Defense counsel asked the jury: "If they are willing to hide stuff from the grand jury, what are they willing to hide from you?" In addition, defense counsel referenced Estrada's bond hearing, and the fact that the government had opposed bond as follows:
> Now, before [Estrada] is brought in front of a judge he has a bond hearing. The Government moves for pretrial detention, doesn't want the man released. No bond is good enough. That was just a few weeks ago. Now they're willing to go in front of a Court and ask the Court to give him a lower sentence than he should get.

[Defense counsel]: Objection. Again this is improper.

The Court: Overruled.

[Government]: He knows that these plea agreements are gone over in open court. He also wants you to think this case is about the personal credibility of the lawyers involved, whether he is telling you the truth, whether I am telling you the truth.

3. Government's Statement about Estrada's Bond Hearing

With respect to the bond hearing, the government made the following statement in its rebuttal during closing argument:

> I mentioned before that defense counsel was playing on the ignorance of lay people about the minutia that go on in the criminal justice system. They're things only lawyers or other people involved here need to know day-to-day. He was playing on that and I will give you an example. He said Kenry Estrada was held because there was no bond good enough. He even asked that's because he was dangerous. What he did not tell you is that defendants can be held on bond without any reason.

Cayasso objected again, stating that the government "was trying to bring up a legal response to something that was not brought into evidence." Overruling the objection, the district court stated, "I believe it is directly in response to something that you represented in your closing argument. Overruled." The government then continued by stating:

> What [defense counsel] asked during trial was, was [Estrada denied bond] because [he] was dangerous? What [defense counsel] did not tell you is one of the bases for holding someone without bond is if they pose a risk of flight. When they look at risk of flight they look at

6

whether they have family in the area or if you own any property. He
has no family. He is not from here so of course he was detained.

Cayasso claims that this statement regarding the government's reasons for opposing

Estrada's bond is unsupported by the evidence. Cayasso moved for the district

court to instruct the jury that the government had opposed Estrada's bond because

no bond would be sufficient. The district court denied this request.

The jury returned a guilty verdict on all four counts: (1) conspiracy to import

cocaine in violation of 21 U.S.C. § 963; (2) importation of cocaine in violation of

21 U.S.C. § 952(a); (3) conspiracy to possess with intent to distribute cocaine in

violation of 21 U.S.C. § 846; and (4) possession with intent to distribute cocaine in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Cayasso was sentenced to 72

months' imprisonment on each count, to be served concurrently. Cayasso timely

appealed.[3]

## II. DISCUSSION

Cayasso argues that the district court erred in denying his motion for a new

trial based upon: (1) the government's reference in its opening statement to

Cayasso's post-arrest silence; (2) the government's allegedly disparaging remark in

its rebuttal statement that defense counsel was "playing"; and (3) the government's

---

[3]Cayasso does not appeal his sentence, and raises issues related only to the district court's denial of his motion for new trial based upon the allegedly improper statements made by the prosecution.

claim in its rebuttal regarding the basis for Estrada's pre-trial detention. Cayasso also argues that, if the errors are not individually sufficient to require a new trial, the cumulative effect of all the errors is sufficient.[4]

**A. Reference to Cayasso's Post-Arrest Silence**

Cayasso argues that the prosecutor's brief reference to Cayasso's failure to respond when confronted with Estrada's presence violates the constitutional prohibition against using a defendant's post-arrest silence against him and requires a new trial. Doyle v. Ohio, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976) ("[I]t does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence. . . ." (internal quotation marks and citation omitted)). We disagree.

"While a single comment alone may sometimes constitute a Doyle violation, the Supreme Court[] . . . [made] clear that a single mention does not automatically suffice . . . when the government does not specifically and expressly attempt to use . . . the improper comment to impeach the defendant." United States v. Stubbs, 944 F.2d 828, 835 (11th Cir. 1991) (citing Greer v. Miller, 483 U.S. 756, 107 S. Ct.

_____

[4]"The decision whether to grant a mistrial lies within the sound discretion of a trial judge as he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Satterfield, 743 F.2d 827, 848 (11th Cir. 1984). "When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse only if the evidence 'is so highly prejudicial as to be incurable by the trial court's admonition.'" United States v. Harriston, 329 F.3d 779, 787 n.4 (11th Cir. 2003) (citations omitted).

3102 (1987)). Here, as in Stubbs, "[t]he prosecution made no specific inquiry or argument about [Cayasso's] postarrest silence." Id. (internal quotation marks and citation omitted). In fact, the prosecution was discussing this silence in the context of a subsequent confession and was clearly focusing on what Cayasso said, as opposed to what he did not say. The government also mentioned Cayasso's lack of response only in passing, and it was never discussed again. Cf. United States v. Tenorio, 69 F.3d 1103, 1107 (11th Cir. 1995) (reversing conviction where a defendant's post-arrest silence "was the touchstone of the government's case-in-chief, its cross-examination of the defendant, and its closing argument during [the] trial of short duration").

More importantly, the district court's curative instruction generally informed the jury that it could not consider Cayasso's failure to testify when deciding if the government had proved its case. See United States v. Herring, 955 F.2d 703, 710 (11th Cir.1992) (stating that "prosecutorial misconduct may be rendered harmless by curative instructions to the jury"). Under these circumstances, we cannot say that the district court abused its discretion in denying Cayasso's motion for a new trial based on the prosecutor's reference to Cayasso's post-arrest silence.[5]

---

[5]Cayasso also argues that the prosecution's comment on his failure to respond violated Federal Rule of Criminal procedure 16(a)(1)(A). Rule 16(a)(1)(A) requires the government to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the

9

**B.      Statements in Prosecution's Rebuttal Statement**

Cayasso also challenges the two remarks made in the prosecution's rebuttal argument, namely the remark that defense counsel was "playing" and the statement regarding the reason Estrada was denied bond.  In order to succeed on appeal, Cayasso must show that the prosecutor's statements were improper and that, in the context of the entire trial, the improper closing statement prejudiced Cayasso's substantial rights.  United States v. Cordoba-Mosquera, 212 F.3d 1194, 1198 (11th Cir. 2000).  A defendant's substantial rights are prejudiced if "there is a reasonable probability that, but for the remarks, the outcome would be different."   United States v. Adams, 74 F.3d 1093, 1097 (11th Cir. 1996) (citation omitted).  Also, "[t]his [C]ourt gives considerable weight to the district court's assessment of the prejudicial effect of the prosecutor's remarks and conduct."  Cordoba-Mosquera, 212 F.3d at 1198 (internal quotation marks and citation omitted).

Under the facts of this case, even if the prosecution's statements during its

---

government intends to use the statement at trial."  Fed. R. Crim. P. 16(a)(1)(A).  Such a statement includes a defendant's refusal to make a statement.  United States v. Manetta, 551 F.2d 1352, 1356 (5th Cir. 1977).  "The purpose of [R]ule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance."  United States v. Camargo-Vergara, 57 F.3d 993, 999 (11th Cir. 1995).  As discussed above, the government made no use of the fact that Cayasso failed to respond at the moment when Estrada was brought to Cayasso's interrogation room.  We thus conclude that this also is not reversible error in this case.

rebuttal were improper,[6] Cayasso has not established that his substantial rights were affected. The prosecutor's statements involved a witness's bond hearing and a comment in response to defense counsel's characterization of the grand jury proceeding. In the context of the full trial, these statements are insignificant. Cayasso confessed, describing his involvement in the crime to three officers who all testified at trial. Cayasso's confession was directly corroborated by Estrada's testimony. We thus conclude that the evidence against Cayasso was strong enough that he has failed to establish "a reasonable probability that, but for the remarks, the outcome would be different." See Adams, 74 F.3d at 1097.

We further conclude that any cumulative effect that the allegedly improper statements may have had is also insufficient to warrant a new trial, and that the district court did not abuse its discretion. See id. at 1099-1100 (discussing cumulative effect).

### III. CONCLUSION

For all of the above reasons, we conclude that the district court did not abuse its discretion in denying Cayasso's motions for a new trial.

**AFFIRMED.**

---

[6]On appeal, the government argues that the prosecutor's remarks in his rebuttal were appropriate responses to Cayasso's closing argument under the "fair reply doctrine." See, e.g., United States v. Sarmiento, 744 F.2d 755, 765 (11th Cir. 1984) (stating that the prosecution is entitled to respond to the arguments of the defense, and that the issues raised by a defendant in his closing argument are "fair game for the prosecution on rebuttal"). However, we need not reach this issue because we determine above that, in any event, Cayasso's substantial rights were not prejudiced.