Robert E. WHITE, Teresa Jane White, and their marital community, and Charles V. McClellan, Jr., on their own behalf and as representatives of classes of similarly situated persons, Plaintiffs,

v.

Dr. C. Alvin PAULSEN, in his individual and former official capacity; Battelle Pacific Northwest Laboratories, a division of Battelle Memorial Institute, Inc., an Ohio corporation; The University of Washington; The University of Washington Medical Center; Dr. John Randolph Totter, in his individual capacity; Dr. James Leslie Liverman, in his individual capacity; Robert J. Rhay, in his individual and former official capacity; Garrett Heyns, in his individual and former official capacity; Dr. William J. Bremner, in his individual and former official capacity; General Electric, Co., Dr William Conte, in his individual and former official capacity; C.E. Heffron, in his individual and former official capacity, Defendants.

Don BYERS, Airway Heights, Washington, and Don Kreitz, Spokane, Washington, Plaintiffs,

v.

C. Alvin PAULSEN, M.D., Seattle, Washington, Defendant.

No. CS–97–239–RHW.

United States District Court, E.D. Washington.

March 16, 1998.

Merrill Davidoff, Daniel Berger, Stanley B. Siegel, Eric L. Cramer, Kendall S. Zylstra, Neil F. Mara, Berger & Montague, Philadelphia, PA, Bradley S. Keller, Byrnes & Keller, Seattle, WA, for Robert E. White, Teresa Jane White.

Stanley B. Siegel, Eric L. Cramer, Kendall S. Zylstra, Neil F. Mara, Berger & Montague, Philadelphia, PA, Bradley S. Keller, Byrnes & Keller, Seattle, WA, for Charles V. McClellan, Jr., Don Byers, Don Kreitz.

David L. Martin, Lee Smart Cook Martin & Patterson, Seattle, WA, David Michael Jacobi, John Donahue Wilson, Jr., Wilson Smith Cochran and Dickerson, Seattle, WA, for C. Alvin Paulson, M.D.

John Donahue Wilson, Jr., Wilson Smith Cochran and Dickerson, Seattle, WA, for Bd. of Regents of the University of Washington.

David Michael Jacobi, John Donahue Wilson, Jr., Wilson Smith Cochran and Dickerson, Seattle, WA, for University of Washington Medical Center, Dr. William J. Bremmer.

William Randolph Squires, III, Summit Law Group, Seattle, WA, for Battelle Pacific Northwest Laboratories, div. of Battelle Momorial Inst. Inc. an Ohio Corp.

Richard Montague, U.S. Dept. of Justice, Civil Div. -- Torts Branch, Washington, DC, Christopher Lee Pickrell, U.S. Attorney's Office, Seattle, WA, for John Randolph Totter, Dr., James Leslie Liverman, Dr.

Michael F. Madden, Bennett & Bigelow, Seattle, WA, for Robert J. Rhay.

Patricia H. Wagner, Heller Ehrmann White and McAulife, Seattle, WA, for General Electric Co.

James P. Connelly, Bruce Edward Didesch, U.S. Attorney's Office, Spokane, WA, Richard Montague, Janet F. Katz, Gay E. Kang, Christina M. Humway, U.S. Dept. of Justice, Civil Div. -- Torts Branch, Washington, DC, for USA.

Keith D. Petrak, Bradley S. Keller, Byrnes & Keller, Seattle, WA, Daniel Berger, Stanley B. Siegel, Eric L. Cramer, Kendall S. Zylstra, Berger & Montague, Philadelphia, for Donna Bryant, David L. Bryant, William Dana, Clara Dana, Michael Donovan, Vincent Fraulini, Helen Fraulini, William Jansen, David Metreveli, Donald Nelson, Obie Noonkester, Jack Shepard, Jess Shirley, Charles Stowell.

## ORDER GRANTING MOTION TO DISMISS CLAIMS OF CRIMES AGAINST HUMANITY

WHALEY, District Judge.

Before the Court is Defendant C. Alvin Paulsen's Motion to Dismiss (Ct.Rec. 78), which has been joined by Defendants General Electric Company, Battelle Memorial Institute, Rhay, and Conte. Defendants' motion seeks dismissal of the White and McClellan Plaintiffs' "crimes against humanity" cause of action, which pertains to radiation experiments that Plaintiffs allege were conducted on them without their informed consent while they were prisoners in the custody of the State of Washington. As is discussed more fully below, Defendants' motion is granted, and this cause of action is dismissed, because Plaintiffs' allegations do not correspond to a federal private right of action for violations of international law's prohibition of "crimes against humanity."

### DISCUSSION

■ A federal court may not consider claims as to which it does not have valid subject matter jurisdiction. For a lower federal court, this requires that there be both a federal constitutional and statutory basis for jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701–02, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Richardson v. United States,* 943 F.2d 1107, 1112–13 (9th Cir.1991). Here, Defendants have not challenged the existence of a basis for jurisdiction under Article III of the United States Constitution if the conduct attributed to Defendants violated the law of nations. *See In re Estate of Ferdinand E. Marcos Human Rights Litigation,* 978 F.2d 493, 502–03 (9th Cir.1992) ("*Marcos I*") (discussing "arising under" jurisdiction of Article III in context of violations of the law of nations). Rather, the question is whether Plaintiffs correctly assert that subject matter jurisdiction exists under 28 U.S.C. § 1331, which provides a statutory basis for federal jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States."

■ In the context of this motion, the central issue is whether Plaintiffs' cause of action "arises under" any of the sources of federal law identified in § 1331. Put slightly differently, because § 1331 is a pure jurisdictional statute that does not, on its own, create a private right of action for all violations of federal law, the critical question is wheth-

er a right of action is created by some other source of federal law. *In re Estate of Ferdinand Marcos, Human Rights Litig.,* 25 F.3d 1467, 1474–75 (9th Cir.1994) ("*Marcos II*"); *see also Montana–Dakota Util. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951) ("The Judicial Code, in vesting jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions."). Thus, for jurisdiction to exist under § 1331 over Plaintiffs' "crimes against humanity" cause of action, a source of federal law other than § 1331 must give rise to a private right of action for the violations of international law they allege.

Plaintiffs contend there are two such sources: the law of nations, as it is incorporated into the laws of the United States, and treaties to which the United States is a party. These arguments are addressed separately.

LAWS OF THE UNITED STATES

■ Plaintiffs argue first that a right of action exists under the "laws ... of the United States." Specifically, Plaintiffs assert that non-consensual medical experimentation violates the law of nations and, therefore, the laws of the United States. So far, Plaintiffs rest on solid ground. *See The Paquete Habana,* 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (1900) ("International law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction as often as questions of right depending upon it are duly presented for their determination."); *Marcos II,* 25 F.3d at 1473–74 (prohibition of torture is a *jus cogens* norm of international law, the violation of which establishes federal jurisdiction over tort claims brought under the cause of action created for such claims by 28 U.S.C. § 1350); *United States v. Brandt,* (The Medical Case), 2 Trials of War Criminals Before the Nuremberg Tribunals Under Control of Council Law No. 10, p. 181 (1949) (elaborating Nuremberg Code, which prohibits non-consensual medical experimentation); International Covenant on Civil and Political Rights, Art. 7, Annex to G.A. Res. 2200, 21 U.N. GAOR Supp. (No. 16) U.N. Doc. A/6316

(1966) (equating non-consensual medical experimentation to torture).

■ Plaintiffs' argument loses its footing at the critical next step: demonstrating the law of nations gives rise to a private right of action that applies to the allegations in this case. The law of nations itself does not create such a right of action because "[i]nternational law does not require any particular reaction to violations of law .... Whether and how the United States wishes to react to such violations are domestic questions." *Marcos II,* 25 F.3d at 1475 (internal quotation omitted); *but compare Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 777–78 (D.C.Cir.1984) (Edwards, J., concurring) (source of *Marcos II* quotation) *with id.* at 816–19 (Bork, J., concurring) (suggesting that law of nations may give rise to self-executing individual rights in extraordinary circumstances). Additionally, Plaintiffs point to no municipal authority that expressly creates a private right of action for international law's prohibition on non-consensual medical experimentation. Instead, the viability of Plaintiffs' "laws ... of the United States" argument rests entirely on their contention that this Court has the inherent authority to find that such a cause of action is implicit in the body of federal common law that incorporates the law of nations.

■ Plaintiffs are correct in their general assertion that federal courts have the authority to imply the existence of a private right of action for violations of *jus cogens* norms of international law. In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) for example, the Supreme Court recognized there may be unique situations where private rights of action may be implied for violations of federal constitutional rights for which no statutory right of action exists, reasoning that "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." 403 U.S. 388, 392, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)); *see also United States v. Stanley,* 483 U.S. 669, 710,

107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (O'Connor, J., dissenting in part) (expressing willingness to infer *Bivens* right of action for due process violations relating to Nuremberg Code's prohibition on non-consensual medical experimentation). This Court can conceive of no adequate reason why the rationale supporting the existence of judicial authority to recognize implied remedies for constitutional rights does not apply with equal or greater force to *jus cogens* norms of international law, such as the prohibitions on genocide, torture, and slavery.

■ Whether a federal court *should* imply the existence of such a remedy in the context of a particular case is a different question. The implication of a private right of action does not necessarily flow from the identification of a potential violation of an important federal right. As the Supreme Court has noted, not every federal right of magnitude gives rise to an implied right of action where no express statutory right of action exists. *See, e.g., Schweiker v. Chilicky,* 487 U.S. 412, 414, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) ("The absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Rather, federal courts also must consider whether there exist "special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens* 403 U.S. at 396; *see also Stanley,* 483 U.S. at 678–79.

Here, several such factors indicate a private right of action that addresses Plaintiffs' allegations should not be implied. First, and foremost in this Court's view, is the existence of adequate domestic remedies for the alleged conduct underlying Plaintiffs' "crimes against humanity" cause of action. *See Schweiker,* 487 U.S. at 412 (existence of adequate existing remedies is a special factor counseling hesitation in implying a new cause of action absent congressional action); *see also Bivens,* 403 U.S. at 397 (noting case did not involve situation where Congress had established an alternative remedy). In this case, Plaintiffs have access to an array of domestic remedies for the alleged wrongs that underlie Plaintiffs' asserted international law cause of action, including a right of action under the Eighth Amendment to the United States Constitution's prohibition on "cruel and unusual punishment," *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), under the Federal Tort Claims Act for injuries inflicted by the wrongful acts of federal employees, 28 U.S.C. § 1346(b), and under state tort law, *see, e.g.,* Restatement (Second) of Torts §§ 13, 18, 21, & 46 (describing torts of battery, assault, and intentional infliction of emotional distress). Indeed, a substantial consideration affecting the Court's determination of this issue is the fact that these causes of action are already a part of this litigation.

A closely related consideration is the fact that, unlike *Bivens,* this case does not involve a situation where there is "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy." *Bivens,* 403 U.S. at 397. Instead, in the Torture Victim Protection Act of 1991, Congress created a private right of action that, in its view, "carries out obligations of the United States ... pertaining to the protection of human rights by establishing a civil action for recovery of damages from an individual who engages in torture or extrajudicial killing." Pub.L. No. 102–256, 106 Stat. 73, codified at 28 U.S.C. § 1350; *id.* § 2 (creating cause of action). While this cause of action does not appear to reach the facts of this case,[1] the fact that the relief authorized by Congress is not coextensive with the right at issue does not mean this Court should not show deference to Congress's balancing of the policy considerations underlying its action. *Schweiker,* 487 U.S. at 423. This is particularly true given that the United States Senate has expressly opined that it is unnecessary to create a new private right of action enforcing the rights recognized in the International Covenant on Civil and Political Rights, which include a prohibition on non-consensual medical experimenta-

---

**1.** On its face, the right of action created by the Torture Victim Protection Act is limited to conduct taken under color of law of a "foreign" nation. Pub.L. No. 102–256, § 2.

tion, because existing United States law ·is adequate to enforce those rights. S. Exec. Rep. 102–23, at 14–15 (1992).

Finally, an additional factor counseling hesitation is that the Court is being asked to address a matter that is principally entrusted by the federal constitution to Congress or the Executive. *See, e.g., Stanley,* 483 U.S. at 683–84 ("The special factor that counsels hesitation is ... the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate."); *Chappell v. Wallace,* 462 U.S. 296, 301–304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (declining to imply *Bivens* remedy against · military officers by enlisted personnel because, in part, the federal constitution vests principal responsibility for military matters in Congress and the President). The determination of what international obligations the United States chooses to recognize or enforce is an area that long has been · recognized as entrusted principally to the Legislative and Executive branches of the federal government. *See, e.g., Handel v. Artukovic,* 601 F.Supp. 1421, 1428 (C.D.Cal.1985) ("To imply a cause of action from the law of nations would completely defeat the critical right of the sovereign to determine whether and how international rights should be enforced in that municipality."); *see also Tel–Oren,* 726 F.2d at 779 n. 4 (Edwards, J., concurring) (declining to imply right of action under § 1331 for violations of law of nations because "the law of nations consciously leaves the .provision of rights of action up to the states"); *cf. Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 423–24, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (recognizing act of state doctrine is founded, in part, on con-

stitutional principle of separation of powers).[2] When combined with the fact that Congress has already created a private right of action enforcing international law's prohibition on torture, this recognition that the two political branches of our government bear principal responsibility for acting in this field constitutes a strong factor counseling judicial hesitation in the implication of additional remedies.

Given the existence of these special factors counseling hesitation, the Court declines to imply from the law of nations the existence of a private right of action that applies to the facts of this case.

TREATIES OF THE UNITED STATES

▬ Plaintiffs' alternative argument that a right of action is created under the "treaties of the United States" fares no better. Where Congress has not enacted authorizing legislation, a treaty gives rise to a private right of action only if it is "self-executing"; i.e., if it either expressly or impliedly creates a private right of action to enforce rights described in the treaty. *Marcos I,* 978 F.2d at 503 ("no private cause of action can ever be implied from a non-self-executing treaty"); *Islamic Republic of Iran v. Boeing Co.,* 771 F.2d 1279, 1283 (9th Cir. 1985) (non-self-executing international agreements "are merely [] agreements between the two nations and have no effect on domestic law absent additional governmental action").

There is no set test for determining whether a treaty is self-executing; different courts have come up with various descriptions of factors relevant to this inquiry. *See, e.g., Frolova v. Union of Soviet Socialist Repub-*

---

**2.** An additional consideration is the difficulty that would necessarily attend attempts to give Plaintiffs' "crimes against humanity" cause of action the type of definition necessary to present this case to a jury. *See, e.g., Tel–Oren,* 726 F.2d at 781–82 (Edwards, J., concurring) (discussing difficulty of deriving specific standards of liability from law of nations); *id.* at 805–06 (Bork, J., concurring) (expressing similar concern). This case does not present the relatively straightforward non-consensual experimentation situations addressed in the Nuremberg trials, which involved prisoners who were forcibly subjected to human experiments, and by Judge O'Connor in *Stanley,* which involved an individual who was

"tricked" into participating in a medical experiment without any disclosure of the true nature of that experiment. Rather; this case appears to involve a situation where the principal substantive issue is whether Plaintiffs' consent to participate in the underlying experiments should be considered informed and voluntary, given their status as prisoners and the alleged defects in Defendants' disclosure of the risks associated with the experiments. Thus, this Court would be required to determine exactly what international law requires in the way of informed consent in this particular set of circumstances, an issue that . is not directly addressed by any of the international law authorities cited by the parties.

*lics,* 761 F.2d 370, 373 (7th Cir.1985) (listing six relevant factors). The Ninth Circuit has expressly stated that its subordinate courts must look to relevant "contextual factors," including:

> the purposes of the treaty and the objectives of its creators, the existence of domestic procedures and institutions appropriate for direct implementation, the availability and feasibility of alternative enforcement methods, and the immediate and long-range social consequences of self- or non–self–execution.

*People of Saipan v. United States Dep't of Interior,* 502 F.2d 90, 97 (9th Cir.1974). Of these four non-exclusive factors, "it is the first factor that is critical to determine whether an executive agreement is self-executing, while the other factors are most relevant to determine the extent to which the agreement is self-executing." *Iran,* 771 F.2d at 1283; *see also Frolova,* 761 F.2d at 373 ("if the parties' intent is clear from the treaty's language courts will not inquire into the remaining factors").

Plaintiffs contend two treaties to which the United States is a party contain self-executing prohibitions on torture that incorporate non-consensual medical experimentation: the previously discussed International Covenant on Civil and Political Rights ("ICCPR"), and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51 at 197, U.N. Doc. A/RES/39/708 (1984), *reprinted in* 23 I.L.M. 1027 ("Torture Convention").[3] To date, however, no court that has considered either of these treaties has found them to be self-executing. *See, e.g., Igartua De La Rosa v. United States,* 32 F.3d 8, 10 n. 1 (1st Cir.1994) (ICCPR not

self-executing); *Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, at 818–19 & n. 26 (D.C.Cir.1984) (Bork, J., concurring) (same). Moreover, both of these treaties expressly require that party-states take steps under their municipal laws to enforce the rights described in those treaties, suggesting strongly that parties to these agreements did not intend for them to be self-executing. *See Foster v. Neilson,* 27 U.S. (2 Pet.) 253, 314, 7 L.Ed. 415 (1829) ("[W]hen the terms of [a treaty] import a contract, when either of the parties engages to perform a particular act, the treaty addresses itself to the political, not the judicial department; and the legislature must execute the contract before it can become a rule for the Court."), *overruled on other grounds, United States v. Percheman,* 32 U.S. (7 Pet.) 51, 8 L.Ed. 604 (1833).

For example, although Article 2 of the ICCPR expressly addresses the duty of party-states to enforce the rights described in the ICCPR, it does not purport to expressly or implicitly create a private right of action for violations of those rights.[4] On its face, Article 2 creates no express right, discussing only what the party-states have agreed to do to give effect to the rights discussed in the ICCPR. Moreover, the language is couched in terms of further actions that States agree to undertake, thereby suggesting that the agreement is subject to further domestic action rather than self-executing. *Compare with Iran,* 771 F.2d at 1283 (finding statements that United States "agrees to" undertake further actions does not evince intent that agreement be self-executing). Additionally, Article 2 expressly recognizes that the treaty imposes no obligation to take further action if effective remedies exist, non-judicial

---

3. Plaintiffs also refer to the United Nations Charter as a self-executing agreement that creates a right of action for non-consensual medical experimentation, but provide no specific authority or argument addressing this contention.

4. The relevant portion of Article 2 of the ICCPR imposes the following obligations on its parties:

> Where not already provided for by existing legislative or other measures, each State Party undertakes to take the necessary steps ... to adopt such legislative or other measures as may be necessary to give effect to the rights recognized in the present covenant.

Each State Party ... undertakes:

> (a) To ensure that any person whose rights or freedoms as herein recognized are violated shall have an effective remedy ....
>
> (b) To ensure that any person claiming such a remedy shall have [the] right thereto determined by competent judicial, administrative or legislative authorities, or by any other competent authority provided for by the legal system of the State, and to develop the possibilities of a judicial remedy.
>
> (c) To ensure that the competent authorities shall enforce such remedies.

or otherwise, and also provides that the remedy need not be judicial in nature. Indeed, to the extent that Article 2 addresses itself to a requirement for a judicial remedy, it states only that its parties must "develop the possibilities of a judicial remedy." From this language, it is apparent that the parties to the ICCPR did not intend for its provisions to be self-executing in the sense of automatically creating a private right of action cognizable by citizens of a State.[5] *See also Tel-Oren,* 726 F.2d at 818–19 & n. 26 (Bork, J. concurring) (language of Art. 2 of ICCPR implies convention is not self-executing).

Supporting this conclusion is the fact that the United States Senate expressly declared that the relevant provisions of the ICCPR were not self-executing when it addressed this issue in providing advice and consent to the ratification of the ICCPR. 138 Cong. Rec. S4781–01, S4784 (April 2, 1992). While this declaration may not carry controlling weight on this issue, the view of the Senate is entitled to substantial deference given the role the United States Constitution confides in the Senate with regard to the process of making treaties the law of the United States. Additionally, with respect to the Torture Convention, it is relevant that Congress has created a private right of action for torture, an action that would be unnecessary if these treaties were self-executing. *See, e.g., Iran,* 771 F.2d at 1284 (issuance of executive order implementing international agreement constitutes evidence agreement was not intended to be self-executing).

Finally, the existence of the various domestic law remedies discussed above counsels against reading into these treaties an intent to create a domestic private right of action. *People of Saipan,* 502 F.2d at 97 (factors relevant to whether treaty is self-executing include "the availability and feasibility of alternative enforcement methods"); *see also* 138 Cong. Rec. at S4783 (subjecting Senate's advice and consent to ratification of ICCPR to reservation that ICCPR's prohibi-

tion on torture binds United States only to extent that prohibition is consistent with relevant provisions of United States Constitution).

Given these considerations, the Court concludes that neither of these treaties is a self-executing treaty that gives rise to a private right applicable to the allegations at issue in this case.

Accordingly, **IT IS HEREBY ORDERED:**

Defendant C. Alvin Paulsen's Motion to Dismiss **(Ct.Rec. 78)** is **GRANTED.** The White/McClellan Plaintiffs' Thirteenth Claim for Relief for "crimes against humanity" is **dismissed** as to all Defendants.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel.

---

5. A similar analysis applies to the language of the Torture Convention, which states:

Each State Party shall ensure in its legal system that the victim of an act of torture obtains redress and has an enforceable right to fair and adequate compensation including the means for as full rehabilitation as possible.... Nothing in this article shall affect any right of the victim or other persons to compensation which may exist under national law.

Torture Convention, Art. 14.