[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23 2000
THOMAS K. KAHN
CLERK

_____

No. 97-5286

_____

D. C. Docket No. 96-00675-LCN

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS IVAN CORDOBA-MOSQUERA,
a.k.a. Jesus Ivan Cordoba, ERWIN
ARNULFO ZUNIGA, a.k.a. Zuniga Erwin
Menoscal, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____
**(May 23, 2000)**

Before ANDERSON, Chief Judge, CARNES, Circuit Judge, and RONEY, Senior
Circuit Judge.

PER CURIAM:

Defendants Jesus Ivan Cordoba-Mosquera, Erwin Arnulfo Zuniga, and Alfredo Gilberto Pinkay-Reyes appeal their convictions for conspiracy to import cocaine in violation of 21 U.S.C. § 963, importation of cocaine in violation of 21 U.S.C. § 952(a), conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Together the defendants argue the seven issues listed below challenging their convictions and sentences and arguing for a new trial. We affirm the convictions, vacate the orders of deportation as a condition of supervised release, and remand for re-sentencing.

Cordoba-Mosquera, a Colombian, was the captain, and Pinkay-Reyes and Arnulfo Zuniga, both Ecuadorians, were crew members, of the *St. Kitts*, an oceangoing freighter of Panamanian registry. On August 5, 1996, upon the arrival of the *St. Kitts* in Miami after departing from San Andres, Colombia, the U.S. Customs Service and Coast Guard discovered 46 bales of cocaine inside one of the *St. Kitts'* shipping containers. Before its departure from Colombia, the *St. Kitts'* shipping containers had been searched by Colombian police, but reportedly no cocaine had been discovered. Based upon this and other evidence, U.S. authorities concluded that the cocaine had been transferred aboard the St. Kitts from another vessel on the high seas, and arrested defendants.

(1) Reversal of Convictions - Jurisdiction of District Court

Defendants' argument that the district court lacked jurisdiction over their prosecutions is frivolous. The argument focuses on 46 U.S.C. app. § 1903, but defendants were not prosecuted under this statute but under 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 21 U.S.C. § 952(a), and 21 U.S.C. § 963. The issue of whether the Coast Guard complied with the requirements of 46 U.S.C. app. § 1903 has no bearing on the district court's jurisdiction over defendants' prosecutions.

(2) Dismissal of Indictment or a New Trial - Vienna Convention

Defendants argue that certain evidence should be excluded, the convictions vacated, and/or the indictments dismissed due to the government's noncompliance with Article 36 of the Vienna Convention. Even if Article 36 creates rights enforceable by individuals, other circuits have held that the remedies available for a violation of Article 36 do not include the suppression of evidence or the dismissal of an indictment. *See United States v. Lombera-Camorlinga*, 206 F.3d 882, 885 (9th Cir. 2000) (en banc) (holding that exclusion of evidence obtained as result of post-arrest interrogation is not available as remedy for violation of Article 36); *United States v. Li*, 206 F.3d 56, 60, 62 (1st Cir. 2000) (en banc) (holding that appropriate remedies for Article 36 violation do not include suppression of evidence or dismissal of indictment). We would follow the lead of these circuits.

3

Even if the remedies requested by defendants may be available in some cases involving Article 36 violations, those remedies are not available absent a showing of prejudice. *Cf. United States v. Morrison*, 449 U.S. 361, 365-67 (1981) (concluding that alleged Sixth Amendment violation that did not prejudice defendant did not justify dismissal of indictment); *United States v. Acosta*, 526 F.2d 670, 675 (5th Cir. 1976) (holding that where defendants were not prejudiced by prosecutorial misconduct, due process did not require setting aside verdict and dismissing indictment). The opinion cited by defendants for the proposition that a showing of prejudice is not required, *Waldron v. INS*, 994 F.2d 71 (2nd Cir. 1993), was withdrawn and superseded by *Waldron v. INS*, 17 F.3d 511 (2nd Cir. 1993), which does not support defendants' position.

Defendants have not identified how the government's alleged failure to comply with Article 36 prejudiced them in any way. Accordingly, defendants are not entitled to any relief based on an alleged failure to comply with the Vienna Convention.

### (3) Reversal of Convictions - Sufficiency of the Evidence

The evidence, taken in the light most favorable to the government, *see United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990), was sufficient to support the defendants' convictions. The jury heard evidence that supported the government's theory that the cocaine had been transferred aboard the *St. Kitts* from another ship

4

while at sea. That evidence included the following: (i) the search of the shipping containers in San Andres, Colombia, which revealed no drugs; (ii) the markings on the side of the ship that could not have come from a pier; (iii) the traces of cocaine found on the red water pipe; (iv) the traces of cocaine on two of the appellant defendants' clothes; (v) indications that the ship slowed its speed at one point in its journey; and (vi) the waterproof materials with which the cocaine was wrapped. Although the defendants presented evidence that tended to dispute the government's theory, the jury could reasonably have believed the government's evidence, disbelieved the defendants' and concluded that a high-seas transfer had occurred. A reasonable fact finder could have concluded that the evidence established the defendants' guilt beyond a reasonable doubt. *See Keller*, 916 F.2d at 632.

(4) New Trial - Withholding of Evidence

Defendants moved for a mistrial on the ground that the prosecutor withheld evidence of an investigation in Colombia concerning whether the *St. Kitts* contained cocaine with the acquiescence of the Colombian police.

One of the showings a defendant must make to obtain a new trial based upon a *Brady* violation is that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

5

Defendants have not shown a reasonable probability that, had the investigation of the Colombian police been revealed earlier, the result of the proceeding would have been different. The defendants were made aware of the investigation during the government's case-in-chief. Despite the late disclosure, defense attorneys were given an opportunity to interview and cross-examine the witnesses from the Colombian police about the investigation and argue the significance of the investigation to the jury.

Defendants argue that, because of the late notice, they were unable to procure a copy of a written report of the investigation. Since the ending of the trial in March 1997, however, neither side has apparently been able to obtain a copy of that report, which reportedly is in the hands of the Colombian government. There is no reason to believe that, had the prosecutor notified the defense of the investigation when he learned of it several days before trial, the report could somehow have been obtained.

There was no error in denying defendants a new trial based upon the withholding of evidence by the prosecution.

(5) New Trial - Improper Jury Selection

There was no clear error in determining that the prosecution rebutted the defendants' prima facie case of discriminatory jury selection under *Batson v. Kentucky*, 476 U.S. 79 (1986). We have held that a prospective juror's inattentiveness

6

is a proper race-neutral reason for using a peremptory strike. *See United States v. Diaz*, 26 F.3d 1533, 1542-43 (11th Cir. 1994) (prospective juror was "generally inattentive during the voir dire, focusing on the defense table during jury selection"); *United States v. Hendrieth*, 922 F.2d 748, 749-50 (11th Cir. 1991) (prospective juror was "inattentive and rubbing and rolling her eyes during voir dire").

The following colloquy occurred between the court and counsel:

| | |
|---|---|
| The Court: | All right. Why did you strike Mr. Banks? |
| [Prosecutor]: | Well, Judge, it won't appear on the record, but his body language in response to you when you asked him questions said naw, and you corrected him and said you have to say yes or no. I didn't like the way he was acting in court, his mannerisms. And I didn't think he wanted to be a juror, so I struck him. |
| [Defense]: | Judge, we would place on the record that as we sat and watched him and watched his demeanor, the fact that he may be slightly casually dressed and a casual person is no different than some of the other people here. And we did not see anything like that, in terms of his behavior. The fact that someone isn't dramatically correct in his response is not a basis to strike him. |
| The Court: | You tell me a little bit more. I mean he did shrug his shoulders and not answer audibly, but a lot of jurors do that. Was it something about his employment or something about his demeanor or something? |
| [Prosecutor]: | It was his demeanor, Judge. |
| The Court: | Articulate more what you mean. |
| [Prosecutor]: | (No response). |
| The Court: | Well, did you think he was not taking this case seriously or do you think he wouldn't have been attentive? |
| [Prosecutor]: | I didn't think he would have been attentive. He thanked me when he walked by after I struck him. That's why I said in my judgment, he didn't want to be here. And I–it was his |

7

|  | attitude that I saw in his responses to the questions. It wasn't what he was saying, but it was his mannerisms and how he was saying things. |
|---|---|
| The Court: | Well, that was certainly a good enough reason, without being a racially-motivated reason. |

The prosecutor's explanation was no less "clear and reasonably specific," *Batson*, 476 U.S. at 98 n.20, than the explanations in *Diaz*, 26 F.3d at 1543, and *Hendrieth*, 922 F.2d at 749-50, which we held overcame the inference of intentional race discrimination. The fact that the dismissed juror "thanked" the prosecutor for striking him strengthens the inference that, during voir dire, he behaved in a way that was perceived by the prosecutor and trial judge as "different from [that of] the other venire persons." *Diaz*, 26 F.3d at 1543.

As *Batson* instructs, we give "great deference" to the trial judge's determination that the peremptory strike was not racially motivated. *Batson*, 476 U.S. at 98 n.21; *see United States v. Alston*, 895 F.2d 1362, 1366-67 (11th Cir. 1990) (applying clearly erroneous standard of review). Deference is particularly warranted here, where the proffered race-neutral explanation centered on the juror's "body language" and "mannerisms" that signaled inattentiveness, behaviors that are especially given to on-the-spot interpretation. We can infer, on the basis of the ruling of the court interpreted in light of the colloquy, that the stricken juror appeared to be more inattentive than the

jurors not stricken. There was no clear error in determining that the peremptory strike was not intentionally discriminatory.

(6) New Trial - Prosecutor's Comments in Closing

There was no reversible error in denying defendants a new trial based upon the prosecutor's comments during his closing argument. "Prosecutorial misconduct is a basis for reversing an appellant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused." *United States v. Reed*, 887 F.2d 1398, 1402 (11th Cir. 1989). This court gives "considerable weight to the district court's assessment of the prejudicial effect of the prosecutor's remarks and conduct." *United States v. Herring*, 955 F.2d 703, 710 (11th Cir. 1992).

The prosecutor said the following:

> Now, ladies and gentlemen, Mr. Abrams has stated repeatedly arguments about transference. Well, ladies and gentlemen, it's my position transference is not the issue.
> What's the issue for you to consider and for these defense attorneys to explain to your satisfaction, how did cocaine residue get aboard the motor vessel St. Kitts to begin with?
> . . . .
> Also, ladies and gentlemen, you heard Mr. Abrams say, well, maybe Mr. Wright was wearing somebody else's clothes.
> Where's the proof?
> . . . .
> . . . Ladies and gentlemen, isn't that the type of information you need to determine a witness's credibility, to determine how accurate his opinions are?

9

You didn't hear it from them.  Instead, ladies and gentlemen–

. . . .

Ladies and gentlemen, there has been no expert witness called. Mr. Kline, Mr. Spiegel, neither one of them said that this didn't float. Neither one of them said this wasn't waterproof.

Immediately  after the prosecutor's closing argument, the court instructed the jury to disregard the comments, and asked them individually if they would do so.  The instruction emphasized that the burden of proof was on the prosecution, and stated that the prosecutor's reference to the lack of "explanation . . . by the defendant" was "totally improper."  The court was in the best position to judge the prejudicial effect of the comments and the efficacy of the curative instruction and jury poll.  Defendants have not shown that any prosecutorial misconduct prejudiced their substantial rights.

(7) Sentencing Error - Deportation as a Condition of Supervised Release

The government concedes that, under *United States v. Romeo*, 122 F.3d 941 (11th Cir. 1997), the district court erred in ordering deportation as a condition of supervised release.  *See Romeo*, 122 F.3d at 943-44 ("8 U.S.C. § 1229a(a) eliminates any jurisdiction district courts enjoyed under [18 U.S.C.] § 3583(d) to independently order deportation.").  We vacate the portion of the sentences ordering deportation as a condition of supervised release and remand for resentencing.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.