**UNITED STATES of America,
Plaintiff,**

v.

**Jose DUARTE–ACERO, Defendant.**

**No. 82–292–CR.**

United States District Court,
S.D. Florida.

Feb. 22, 2001.

---

Michael Sullivan, U.S. Attorney's Office, Miami, FL, for U.S.

Patrick Michael Hunt, Fed. Public Defender's Office, Fort Lauderdale, FL, for defendant.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon Defendant Jose Duarte–Acero's Motion to Dismiss Indictment for Violation of Article 36 of the Vienna Convention on Consular Relations and Articles 12(4), 13 and 14(1) of the ICCPR, filed December 28, 2000. The parties have briefed the Motion fully, and the Motion is now ripe for disposition. For the reasons stated below the Motion will be **DENIED**.

### I. *Background*

The facts of this case are reported in this Court's prior order, *United States v. Benitez*, 28 F.Supp.2d 1361, 1362–63 (S.D.Fla.1998), and thus need not be restated in full. In short, Defendant Jose Duarte–Acero is accused of a number of offenses which arose out of an alleged conspiracy to murder two special agents of the United States Drug Enforcement Agency (DEA) on or about February 10, 1982 in Cartagena, Columbia. Fourteen years later, in August of 1997, Mr. Duarte was lead to believe by undercover agents that he was being offered a legitimate business opportunity. Mr. Duarte was asked to be the manager of a new office that was going to be opened in Cucuta. He was instructed to go to Bogota where he would have the opportunity to meet his new boss and sign a contract. Upon Mr. Duarte's arrival in Bogota, he was informed that a problem had arisen and that he would need to go to Ecuador to retrieve computers that had arrived there for the company.

Mr. Duarte crossed the International Bridge of Rumichaca on foot in order to pick up the truck full of computers as instructed. As he crossed the bridge, he was arrested and informed that he was being excluded from Ecuador and turned over to agents from the United States in order to answer to the 1982 charges. On several occasions he asked to speak to the Colombian Consulate before any formal action was taken. These requests were ignored and Defendant was placed on a plane which transported him to United States to stand trial.

After Defendant Duarte–Acero was indicted, he filed his first Motion to Dismiss.[1] As grounds for the Motion, Defendant relied on Article 14(7) of the International Covenant on Civil and Political Rights, as well as on the international principles of *non bis in idem*, comity, and abstention. Defendant's principal argument was that these provisions should prevent the prosecution of a defendant in the courts of the United States if that defendant was prosecuted earlier for the same offense in the courts of another country. This Court denied Defendant's Motion on all grounds. *See id.* The Eleventh Circuit then affirmed. *See United States v. Duarte–Acero*, 208 F.3d 1282 (11th Cir.2000). Defendant now has filed a second Motion to Dismiss.

### II. *Discussion*

As grounds for his second Motion to Dismiss, Defendant relies on the provisions of two treaties: Article 36 of the Vienna Convention on Consular Relations and Articles 12(4), 13, and 14(1) of the International Covenant on Civil and Political Rights. The Court will discuss each of these grounds in turn.

### A. *The Vienna Convention on Consular Relations*

■ First, Defendant argues that his indictment should be dismissed for viola-

---

1. Mr. Duarte–Acero's first motion to dismiss was later adopted by Co–Defendant, Rene Benetiz. At that time, Mr. Benetiz was Mr. Duarte–Acero's Co–Defendant. On April 28, 1998, Defendant Duarte–Acero filed a motion to sever. Later, on January 25, 2001, the Government filed an oral motion to sever. This Court then granted Mr. Duarte–Acero's and the Government's motions to sever on January 25, 2001.

tions of Article 36 of Vienna Convention on Consular Relations (Vienna Convention). The Vienna Convention is a 79–article, multilateral treaty, which was negotiated in 1963 and ratified by the United States in 1969. *See* Vienna Convention, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 (ratified Nov. 24, 1969). As a properly ratified treaty, the Vienna Convention is the supreme law of the land. *U.S. Const.* art. VI, § 2, cl.2.

■ Article 36 of the Vienna Convention deals specifically with "what a member state must do when a foreign national is arrested." *United States v. Lombera–Camorlinga*, 206 F.3d 882, 884 (9th Cir. 2000). Defendant argues that Article 36 [2] provides an individual right of consular notification and access.[3] The Defendant then argues that the Government willfully violated this right. These violations, the Defendant therefore concludes, caused the Defendant prejudice, which rises to the level of a Constitutional Due Process violation, and which requires dismissal of the indictment.

The Court disagrees with the Defendant; it finds that even if the Vienna Convention, Article 36, creates an individual right of consular notification and access, a dismissal of an indictment is not an appropriate remedy.

In general, "[c]ourts have been unable to reach a consensus, and often even a decision, on the issue[ ] of whether Article 36 creates an individually enforceable right." *United States v. Santos*, 235 F.3d 1105, 1107 (8th Cir.2000). The Eleventh Circuit is no different. While this Circuit has addressed this issue previously, *see United States v. Cordoba–Mosquera*, 212 F.3d 1194, 1195–96 (11th Cir.2000), it has avoided deciding whether Article 36 creates an individual right or whether a dismissal of an indictment would be an appropriate remedy if the individual right was available.

In *Cordoba–Mosquera,* Defendants were convicted of a number of different charges, including importing cocaine. Defendants argued that certain evidence should have been excluded and/or the indictments should have been dismissed because the of the Government's failure to comply with

**2.** Article 36 of the Vienna Convention provides the following:

   1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

   (a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

   (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;

   (c) consular officers shall have the right to visit a national of the sending State who

is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

   2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

Vienna Convention, *supra.*

**3.** Individual rights under a treaty create rights for the individuals, "as opposed to setting out the rights and obligations of the signatory nations." *See United States v. Ademaj,* 170 F.3d 58, 68 n. 13(1st Cir.1999).

Article 36. In denying the claims, the Circuit stated:

> Even if Article 36 creates rights enforceable by individuals, other circuits have held that the remedies available for a violation of Article 36 do not include the suppression of evidence or the dismissal of an indictment.... We would follow the lead of the circuits.
>
> Even if the remedies requested by defendants may be available in some cases involving Article 36 violations, those remedies are not available absent a showing of prejudice....
>
> Defendant has not identified how the government's alleged failure to comply with Article 36 prejudiced them in any way. Accordingly, defendants are not entitled to any relief based on an alleged failure to comply with the Vienna Convention.

*Cordoba–Mosquera*, 212 F.3d at 1196 (citations omitted).

Despite this "wishy-washy" language, this Court feels that *Cordoba–Mosquera* dictates that a dismissal of an indictment is not an available remedy. The Circuit utilized conditional language because it was presented with a scenario in which it could dismiss the case on other grounds. However, the Circuit made clear that if it was presented with a scenario in which there was actual prejudice and in which a party moved for a dismissal of the indictment, then it "would follow the lead of the [other] circuits." *Id.*

In the instant case, unlike in *Cordoba–Mosquera*, there is some evidence that the Government's failure to comply with Article 36 caused the Defendant to suffer prejudice.[4] Therefore, this Court feels that the Eleventh Circuit case law precludes the Defendant from obtaining this remedy. Moreover, all other Circuits that have addressed an alleged violation of Article 36 have found that either (1) the suppression of evidence, (2) the dismissal of an indictment, (3) or both are not appropriate remedies under the Vienna Convention. *See United States v. Li*, 206 F.3d 56, 60, 62 (1st Cir.2000) (en banc) (suppression of evidence not appropriate); *United States v. Page*, 232 F.3d 536, 540–41 (6th Cir. 2000) (suppression of evidence and dismissal not appropriate) *United States v. Chaparro–Alcantara*, 226 F.3d 616, 621–22 (7th Cir.2000) (suppression of evidence not appropriate); *United States v. Lombera–Camorlinga*, 206 F.3d 882, 885 (9th Cir. 2000) (en banc) (suppression of evidence and dismissal not appropriate). Therefore, because the remedy requested by the Defendant is precluded as a matter of law, the Court need not decide if the Vienna Convention creates an individually enforceable right.[5] Accordingly, Defendant's Motion to Dismiss based on the Article 36 of the Vienna Convention is denied.

## B. The International Covenant on Civil and Political Rights

Defendant also argues that his indictment should be dismissed for alleged violations of Articles 12(4), 13, and 14(1) of the International Covenant on Civil and Political Rights (ICCPR).[6] The question

---

**4.** While there is some evidence of prejudice, the Court need not make a determination of whether the prejudice was sufficient to warrant a different remedy.

**5.** Likewise, because the remedy of dismissal is not available, this Court need not decide whether or not the United States Government owed the Defendant a duty under the Vienna Convention when Duarte–Acero was detained in Ecuador. *But see infra* Part II.B.

**6.** Articles 12(4), 13 and 15(1) of the ICCPR provide:

*Article 12*

(4) No one shall be arbitrarily deprived of the right to enter his own country.

*Article 13*

An alien lawfully in the territory of a State Party to the present Covenant may be expelled therefrom only in pursuance of a decision reached in accordance with law and shall, except where compelling reasons of national security otherwise require, be allowed to submit the reasons against his

presented therefore is whether the Government has a duty to comply with the ICCPR when it was outside the United States and within the boundaries of another country.[7] Having extensively researched this issue, it appears that this is a question of first impression.[8]

On September 8, 1992, the United States became party to the ICCPR. Because the ICCPR is a properly ratified treaty, it, like the Vienna Convention, is the supreme law of the land. *U.S. Const.* art. VI, § 2, cl.2. The intent of the ICCPR is to provide international protection for the civil and political rights of the individual, as well as economic, social and cultural rights. *See* ICCPR, Dec. 19, 1966, 999 U.N.T.S. 171, at preamble (ratified Sept. 8, 1992).

The Defendant argues that the United States, as the arresting body, should have assured that all of Defendant's Article 12(4), 13, and 14(1) rights were met.

This Court disagrees.

■ The Court's "first focus interpreting the ICCPR is its plain language." *Duarte–Acero*, 208 F.3d at 1285 (citations omitted). Article 2(1) of the ICCPR defines to which individuals the signatory state must give these rights:

> expulsion and to have his case reviewed by, and be represented for the purpose before, the competent authority or a person or persons especially designated by the competent authority.
> *Article 14*
> (1) All persons shall be equal before the courts and tribunals. In the determination of any criminal charge against him, or of his rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law....
> ICCPR, *supra.*

7. This court will assume, without making a determination, that Defendant's Article 12(4), 13, and 14(1) rights were violated and that he was prejudiced by this violation.

8. Most of the cases that have confronted the ICCPR have only dealt with private parties who attempt to assert a private right under

> Each State Party to the present Covenant undertake to respect and to ensure to all individuals *within its territory and subject to its jurisdiction* the rights recognized in the present Covenant ....
> ICCPR, Article 2(1), *supra* (emphasis added).

The clear language of the ICCPR demonstrates that the ICCPR rights are to be given to the people who are inside a ICCPR country's territory or jurisdiction. Jurisdiction is defined as a "geographic area within which political or judicial authority may be exercised." *Black's Law Dictionary* 855 (7th ed.1999). The United States government was conducting this operation in Ecuador, a geographic area in which the United States has no political or judicial authority. Instead they were operating under the permission of the Ecuadorian government. *See Report for the Commander in Chief of the Nation Police,* from the National Central Office of Interpol to General Headquarters of the National Police, Aug. 29, 1997 (translated) (stating that "[w]ork was coordinated with Mr. Salvador Rodriguez, DEA Director in Ecuador, who through the U.S. Embassy *requests the cooperation of the Minister of Government.*") (emphasis added).

While it may be true to say that the operation to capture Mr. Duarte–Acero was under the direction of the United

the treaty. Courts have uniformly held that there is no private cause of action under the ICCPR. *See Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 818 & n. 26 (D.C.Cir.1984) (Bork, J. concurring); *Igartua De La Rosa v. United States,* 32 F.3d 8, 10 n. 1 (1st Cir. 1994); *Kyler v. Montezuma County,* 203 F.3d 835 (tbl.), *available in* 2000 WL 93996, at *1 (10th Cir.2000); *Hawkins v. Comparet–Cassani,* 33 F.Supp.2d 1244, 1257 (C.D.Cal.1999); *Ralk v. Lincoln County,* 81 F.Supp.2d 1372, 1380 (S.D.Ga.2000); *Heinrich v. Sweet,* 49 F.Supp.2d 27, 43 (D.Mass.1999); *Weaver v. Torres,* No. Civ.A WMN–00–1126, *avaiable in* 2000 WL 1721344, at *3 (D.Md.2000); *Langworthy v. Dean,* 37 F.Supp.2d 417, 423 (D.Md. 1999); *Jama v. INS.* 22 F.Supp.2d 353, 364 (D.N.J.1998); *White v. Paulsen,* 997 F.Supp. 1380, 1385–87 (D.Wash.1998). However, because Defendant is raising his ICCPR claims defensively, this limitation does not apply.

States DEA (as the Defendant alleges), this does not change the fact that the Ecuadorian government was still in charge. The Ecuadorians arrested the Defendant and were the ones that turned him over to the DEA authorities. *See Defendant's Motion to Dismiss*, Dec. 28, 2000, at 2 ("As he crossed the bridge he was immediately arrested and informed that he was being excluded from Ecuador and turned over to agents from the United States.")

Moreover, as the Government correctly notes, the Eleventh Circuit's recent interlocutory opinion provides some guidance in interpreting this provision. In *Duarte-Acero*, the Circuit stated that the provisions of the ICCPR "are to govern the relationship between an individuals and his state .... In other words, the ICCPR is concerned with conduct that takes places [sic] within a state party." *Duarte-Acero*, 208 F.3d at 1286. It therefore makes little sense to say that the ICCPR now governs relationships between and individual and his state *AND a third state* if they are present.

This construction is reinforced if the legislative history of the ratification of the ICCPR by the Senate is examined. *See U.S. Sen. Exec. Rep. 102–23*, 31 I.L.M. 645, 648 (102d Cong, 2d Sess, 1992). The Senate Executive Report states that the ICCPR "guarantees a broad spectrum of civil and political rights, rooted in basic democratic values and freedoms, to all individuals *within the territory or under the jurisdiction of the States Party.*" *Id.* (emphasis added). No other mention is made of the scope of the jurisdictions.

Accordingly, the plain language and the legislative history make clear that the appropriate state party for alleged ICCPR violations in Ecuador is Ecuador and only Ecuador. Ecuador is a sovereign nation that is responsible for its own actions re-

garding defendant.[9] The United States had no duty to administer ICCPR rights in Ecuador. Thus, Articles 12(4), 13, and 14(1) of the ICCPR are inapplicable to this case, and Defendant's Motion will be denied.

### III. *Conclusion*

Neither Article 36 of the Vienna Convention, nor Articles 12(4), 13, or 14(1) of the ICCPR provide Defendants with the relief that they seek. Therefore, having reviewed the Motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED AND ADJUDGED** that Defendant Jose Duarte–Acero's Motion to Dismiss Indictment for Violation of Article 36 of the Vienna Convention on Consular Relations and Articles 12(4), 13 and 14 of the ICCPR, filed December 28, 2000, is **DENIED.**

---

**9.** This is not to say that the United States owes no duty under the ICCPR. The United States must meet the guideline of the ICCPR once the Defendant entered a United States territory and/or an area subject to its jurisdiction. However, this is not the thrust of the instant motion and therefore need not be addressed by this Court.