[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11476
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-00309-WSD-JFK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JEFF NORTH,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 4, 2019)

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Jeff North appeals his convictions for carjacking, discharging a firearm during a crime of violence, and possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(c), and 2119(1). After careful consideration, we affirm.

**I.**

In the early morning hours of March 23, 2015, Officer Willie Williams observed a black van turning onto a street. Once the van finished turning, Officer Williams noticed a blood-soaked man standing on the sidewalk. The man, Johnny Dansby, claimed that North shot him twice and then stole his van. When Officer Williams stopped the van, he found North sitting in the driver's seat, Dansby's wallet and identification in the van, and a revolver wrapped in duct tape underneath the driver's seat. The revolver contained two spent shell casings.

A federal grand jury indicted North on one count of carjacking, in violation of 18 U.S.C. § 2119(1), one count of discharging a firearm during and in relation to a crime of violence in violation of § 924(c), and one count of being a felon in possession of a firearm in violation of § 922(g). North went to trial on December 5, 2017. After the for-cause strikes, the jury venire consisted of thirteen African Americans, two Asian Americans, one Hispanic American, and twelve Caucasians. North was given ten preemptory strikes and the government six. Each side had an additional strike for the selection of alternates. North used eight of his ten strikes

on non-African Americans.  The government used four of its six strikes on African

Americans.  The empaneled jury was majority African American.

At the close of jury selection, North's counsel lodged a Batson v. Kentucky,

476 U.S. 79, 106 S. Ct. 1712 (1986), challenge.  Counsel argued the government's

decision to use two-thirds of its peremptory strikes on African Americans was

prima facie evidence of racial discrimination.  The district court found that the

statistics alone were not enough to make out a prima facie case but nonetheless

asked the government to explain its rationale for striking each of the four African

American potential jurors.  The government explained it struck two jurors because

they were too young, one juror because she seemed disinterested in the

proceedings, and one juror because he had three kids, was not married, and

"appeared to be irritated" when asked whether he was married.  The court found

that the government's reasons were not pretextual and overruled the Batson

objection.

After the jury was seated, the government began its case-in-chief.  The

government called Danby and Michael McCarriagher, a forensic examiner, to

testify, as well as other witnesses.  When Dansby testified, North's counsel sought

to introduce records of Dansby's prior conviction in 2008 for filing a false police

report based on a carjacking that never took place.  The district court sustained the

government's objection that the conviction records constituted inadmissible

extrinsic evidence under Federal Rules of Evidence 404(b) and 608, and the records were not admitted.

The government then called McCarriagher to testify about the results of a gunshot residue test. North's counsel objected on Confrontation Clause grounds. Counsel contended that since McCarriagher did not personally conduct the gunshot residue test, he could not testify about the test's results without violating North's right to confront witnesses against him. The district court overruled the objection because although McCarriagher did not conduct the test himself, he personally supervised and observed the trainee who did. In addition, McCarriagher participated in the testing process as part of his supervisory duties.

The jury convicted North on all three counts. The district court sentenced him to three hundred months imprisonment. North timely appealed.

**II.**

North argues on appeal that the district court erred in three ways: first, by rejecting his Batson challenge to the government's decision to strike four African American jurors; second, by permitting McCarriagher to testify in violation of North's Sixth Amendment rights; and third, by excluding evidence of Dansby's 2008 conviction under Federal Rule of Evidence 404(b). Each of these arguments fails to persuade.

## A.

"We review a district court's denial of a <u>Batson</u> challenge for clear error, according the district court's determination on the ultimate question of discriminatory intent great deference on appeal." <u>United States v. Hughes</u>, 840 F.3d 1368, 1381 (11th Cir. 2016) (quotation marks, citation, and alteration omitted).  Even assuming North put forth sufficient statistical information to make out a prima facie case of racial discrimination, the district court did not clearly err when it found the government's proffered explanation for each strike was not pretextual and that race did not infect the jury selection process.

North argues that the government's explanations were clearly pretextual because it failed to strike other jurors who shared the same characteristics.  It is true, of course, that "a court may find intent to discriminate when the reason provided for striking a juror applies with equal force to a juror that the same party declined to strike, who is <u>outside</u> the protected group of the stricken juror." <u>Id.</u> at 1382 (emphasis added).  Here, however, the record reflects that the government declined to strike <u>other</u> African American jurors for being young and single.  The government explained that it <u>preferred</u> jurors who "had families" and "kids" and therefore had a "strong interest in the quality of the community."  The district court did not clearly err when it determined that after striking the other jurors for "substantially greater" concerns, the government was entitled to use their

remaining two strikes on some of the younger jurors, as opposed to all of them, and that the government's explanation on this point did not amount to pretext.

Neither did the district court clearly err when it accepted the government's rationale for striking a third African American juror because she seemed disinterested in the proceedings. The juror in question "did not participate in the oath," kept her eyes closed, and had to be asked to stand up by the marshals. North does not argue that any other jury venire member behaved in this manner. The district court therefore reasonably accepted that the government struck this juror not because of her race but because of her ambivalence, which the government took as a sign that she would not "carefully analyze the law" at trial. See United States v. Cordoba-Mosquera, 212 F.3d 1194, 1197–98 (11th Cir. 2000) (per curiam).

Last, the district court did not clearly err when it accepted that the government struck a fourth African American juror because he had three children, was unmarried, and "appeared to be irritated" when asked about his marital status. Although there is some tension between the government's decision to strike this juror and its stated preference for jurors with children, this is not enough to overturn a district court's determination against pretext where, as here, the government also faulted the juror for being agitated during questioning. This is not an improbable explanation, and there is something to be said about the

government's concern that the juror's agitation in response to its questioning could potentially bias the juror in favor of the defense. See Madison v. Comm'r, Ala. Dep't of Corr., 761 F.3d 1240, 1251 (11th Cir. 2014) ("More importantly, each of the state's race-neutral reasons is supported by the record and has some basis in accepted trial strategy, at least arguably so." (quotation marks omitted)).

In addition, the final jury had a greater share of African Americans than the jury venire. See United States v. Ochoa-Vasquez, 428 F.3d 1015, 1045 (11th Cir. 2005); see also Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co., 236 F.3d 629, 637 (11th Cir. 2000) ("[A]n inference of discrimination based on the number of jurors of a particular race may arise where there is a substantial disparity between the percentage of jurors of one race struck and the percentage of their representation on the jury."). We therefore cannot say the district court clearly erred when it overruled North's Batson objection.

### B.

"We review a preserved Confrontation Clause claim de novo." United States v. Curbelo, 726 F.3d 1260, 1271–72 (11th Cir. 2013). North contends the district court should not have permitted McCarriagher to testify about the results of the gun residue test because he did not conduct the test himself or "receive the samples into the lab." This argument is without merit.

McCarriagher testified he received the package containing the evidence to be tested and that the seal was unbroken at the time of delivery, meaning the package had not been tampered with.  He additionally testified that although he didn't personally conduct the analysis, he oversaw and supervised the trainee who did.  As part of his supervision, McCarriagher set up the testing instruments, ensured the data obtained was valid, and checked that the trainee's notes and opinions were consistent with the instrumental data—all before the trainee wrote his report.  In other words, as the district court stated, "McCarriagher not only observed, but participated in the testing."  This is more than enough to distinguish this case from Bullcoming v. New Mexico, 564 U.S. 647, 131 S. Ct. 2705 (2011), and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527 (2009), where either no one was called to testify about the report's contents, Melendez-Diaz, 557 U.S. at 311, 129 S. Ct. at 2532, or the person testifying neither performed nor observed the test reported in the certification, Bullcoming, 564 U.S. at 652, 131 S. Ct. at 2710.

The district court therefore did not err when it permitted McCarriagher to testify as to the results of the gun residue test.  See Bullcoming, 564 U.S. at 666, 131 S. Ct. at 2718 (Part IV of the opinion of Ginsburg, J., in which Scalia, J., joins) ("New Mexico could have avoided any Confrontation Clause problem by asking Razatos to . . . testify to the results of his retest rather than to the results of a test he

did not conduct <u>or</u> observe." (emphasis added)), 564 U.S. at 672–73, 131 S. Ct. at 2722 (Sotomayor, J., concurring) (distinguishing <u>Bullcoming</u> from "a case in which the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue").

## C.

We review a district court's evidentiary rulings for an abuse of discretion. See <u>United States v. Taylor</u>, 417 F.3d 1176, 1179 (11th Cir. 2005) (per curiam). North argues the district court should have admitted into evidence Dansby's 2008 conviction records because they were not inadmissible under Federal Rule of Evidence 404(b). This argument, however, is belied by North's own statement on appeal that he sought to admit the conviction records to prove that Dansby "lied when he reported that []North carjacked him," just as Dansby lied when he told the police he was carjacked in 2008. What is this if not an attempt to use extrinsic evidence to prove that someone acted in conformance with prior bad conduct? This is the very act Rule 404(b) prohibits. Fed. R. Evid. 404(b)(1). In addition, trial counsel successfully used the facts underlying the conviction to impeach Dansby on cross-examination. The district court therefore did not abuse its discretion in declining to admit into evidence Dansby's record of conviction.

**AFFIRMED.**

9